525 A.2d 885

St. Barnabas, Inc., Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Submitted on briefs January 6, 1987, to Judges MAC-PHAIL, DOYLE and BARRY, sitting as a panel of three.

*John F. Dugan,* with him, *Stephen C. Kunkle, Kirkpatrick & Lockhart,* for petitioner.

*Jonathan Zorach,* Associate Counsel, with him, *Paul E. Baker,* Acting Deputy Chief Counsel, for respondent.

OPINION BY JUDGE MACPHAIL, May 15, 1987:

St. Barnabas, Inc. (Employer) petitions for review of an Unemployment Compensation Board of Review (Board) order which reversed a referee's order and awarded unemployment compensation benefits to Beverly Lintz (Claimant).[1] We reverse.

Claimant worked for Employer as an accounting supervisor until March 12, 1984. On March 9, 1984 she submitted her resignation following an incident during which her immediate supervisor, Mr. Joseph Hlinka, allegedly make an unjust accusation concerning her work performance in a loud and abrasive manner.[2] The incident, according to Claimant's testimony, followed several years of verbally abusive treatment by Mr. Hlinka.

The Board found that Claimant had been subjected to "humiliating treatment," had been sexually harassed and had suffered adverse health effects as a result of this treatment.[3] The Board concluded that Claimant was en-

---

[1] This case was remanded to the Board by agreement of the parties for a further hearing after the Board's previous order of August 7, 1984 denying unemployment compensation benefits was appealed by the Claimant to this Court. The record of that hearing would not be capable of appellate review because of numerous "inaudible" references in critical testimony.

[2] The Claimant's testimony regarding the March 9 incident was as follows:

[H]e came into my office and just pushed the door. It was still ajar. It was not closed. And he was yelling, I feel, very loud. And he said that he was sick and tired of this crap. And if I didn't shape up and start acting right, I was going to be looking for another job.

Notes of Testimony (N.T.) from May 24, 1984 at 2, Reproduced Record (R.R.) at 23a.

[3] Claimant's counsel stated at the conclusion of the remand hearing that Claimant was not contending that she had health problems that forced her to quit. N.T. at 13, R.R. at 146a.

titled to unemployment compensation benefits because she had cause of a necessitous and compelling nature to voluntarily leave her job.[4]

Our scope of review is limited to a determination of whether constitutional rights have been violated, an error of law has been committed, or whether any necessary findings of fact made by the agency are not supported by substantial evidence. *Pacini v. Unemployment Compensation Board of Review*, 102 Pa. Commonwealth Ct. 355, 518 A.2d 606 (1986).

In order to establish cause of a necessitous and compelling nature for terminating employment a claimant must demonstrate that his conduct was consistent with ordinary common sense and prudence and that the circumstances which prompted the severance of the employment relationship were real, not imaginary, substantial, not trifling, and reasonable, not whimsical. *Berardi v. Unemployment Compensation Board of Review*, 73 Pa. Commonwealth Ct. 549, 458 A.2d 668 (1983).

We have held that in order to prove that a claimant has used common sense in voluntarily quitting as a result of sexual harassment, a claimant must show that she made her employer aware of the harassment. *West v. Unemployment Compensation Board of Review*, 53 Pa. Commonwealth Ct. 431, 417 A.2d 872 (1980); *Colduvell v. Unemployment Compensation Board of Review*, 48 Pa. Commonwealth Ct. 185, 408 A.2d 1207 (1979).

In this regard, the Board made the following finding, "[T]he claimant's employers [sic] were aware of her supervisor's ill treatment." Our review of the evidence indicates that the Claimant admitted she was aware of

---

[4] Section 402(b) of the Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(b).

provisions in the Employer's handbook relating to problem solving procedures. The pertinent page from the manual was introduced at the initial hearing as Employer's Exhibit 1.[5] The manual states:

> [T]he employee should first discuss the problems with his/her supervisor. If this proves unsatisfactory, he/she may make an appointment to see the department manager. If the employee believes the problem is still not resolved, he/she may request an appointment with the head of the division. At this point, the problem should be solved, however, if not, a request may be made to have an appointment with the president.

Claimant testified that she did discuss her problem with the personnel director in 1983 and that she was advised to discuss it with Mr. Hlinka. Claimant said she did not go to him or to Mr. Day, who was the president of the company, for fear of being fired. She talked to no one about the 1984 incident prior to handing in her resignation.

In *Colduvell,* Judge CRAIG writing for this Court said:

> The problem of job-related sexual harassment or insinuation is a very difficult one; employees are understandably reticent to complain or try to prove affronts of such a personal and debasing nature, especially when they come from a supervisor.

> However, for purposes of unemployment compensation benefits, the law is clear: the claimant must sustain the burden of proving a reasonable attempt to stay on the job. Claimant's failure to give the owners an opportunity to un-

---

[5] Original Record, exhibit 6, R.R. at 36a.

derstand the nature of her objection, before resigning, did not meet that burden.
48 Pa. Commonwealth Ct. at 187, 408 A.2d at 1208.

While this Court has never required a claimant to perform a futile act, we do believe that common sense and prudence would require the Claimant here to report her difficulties with Mr. Hlinka to the president, since that was an option provided by the Employer, rather than submitting her resignation without giving the Employer the opportunity to solve the problem.

As for the finding made by the referee that Claimant has been subjected to "humiliating treatment," we conclude that Claimant was required to report those incidents to the president as well. It is true that a claimant need not indefinitely subject herself to unjust accusations and abusive conduct. But, in a case such as this one at bar, where a mechanism is in place to deal with such problems and is known to Claimant, Claimant must make a good faith effort to employ that mechanism in an effort to solve her problems. It is clear that she did not do so.

Since there is no substantial evidence in the record to support the Board's finding that the Employer's president, *i.e.*, the Claimant's employer, was aware of the problems Claimant was allegedly having with Mr. Hlinka, we must reverse.

## ORDER

The order of the Unemployment Compensation Board of Review dated June 18, 1985 which awarded unemployment compensation benefits to Beverly Lintz is reversed.