647 A.2d 295

**Joanne PEDDICORD, Petitioner,**

**v.**

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 22, 1994.

Decided Aug. 18, 1994.

Timothy A. Fedele, for petitioner.

Randall S. Brandes, Asst. Counsel and Clifford F. Blaze, Deputy Chief Counsel, for respondent.

Before CRAIG, President Judge, NEWMAN, J., and DELLA PORTA, Senior Judge.

CRAIG, President Judge.

Joanne Peddicord (claimant) appeals an order of the Unemployment Compensation Board of Review affirming a referee's decision denying benefits because the claimant voluntarily left her employment with Eastern Off Road Equipment (employer) without cause of a necessitous and compelling nature as required by § 402(b) of the Unemployment Compensation Law.[1]

The facts, as found by the board, are that the claimant was employed as a product line manager for six and one-half years. In 1986, shortly after the claimant began her employment, a male co-worker suggested that she "blew" (had oral sex with) the general manager to get a promotion. The claimant informed the general manager of the situation, and she had no further problems with that co-worker. (Finding of Fact No. 4)

In July of 1992, the employer asked the claimant to attend a trade show at which bikini-clad models would appear in a beauty pageant. The claimant notified her immediate supervisor of her opposition to attending, and the employer exempted her from attending.

[1] Unemployment Compensation Law, Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(b).

In early 1993, the claimant asked the same co-worker who had made the offensive comment in 1986 if he would trade his company-owned pickup truck for her private car for the weekend. The co-worker, who had since been promoted to regional manager, responded by telling her, "You know the deal. Only if I can have one night with your daughter." (Finding of Fact No. 10) The record indicates that the regional manager made the remark in the presence of the claimant's immediate supervisor.

In June of 1993, the general manager responded to the claimant's complaint of unequal pay by instructing her to have her name placed on the regional manager's retail sales list so that she would be eligible to transfer to the retail division and receive the same benefits as the employer's retail store managers. When the claimant asked the regional manager to have her name placed on this list, he responded by saying, "You know the deal. You know, your daughter. You'll never work for me unless I have one night with your daughter." (Finding of Fact No. 19)

The claimant did not report that incident to any supervisor or administrator, as required by the employer's sexual harassment policy which states, in part:

Employees who feel that they have been sexually harassed should report the incident directly to their supervisor or if they want, they may report the incident to the corporate administrator or their assistant.

The claimant did submit a written resignation, but she did not state any reasons why she was quitting.

The referee determined, because the claimant did not follow the employer's sexual harassment policy and communicate the incidents of sexual harassment to her immediate supervisor or an administrator, that she had failed to put forth a reasonable effort to preserve the employment relationship. The referee also concluded that the facts do not support the claimant's assertions that the employer discriminated against her because of her sex or that a unilateral change in the terms of her employment took place. Therefore, the referee denied bene-

fits because the claimant did not have a necessitous and compelling reason to voluntarily quit. On appeal the board affirmed the denial of benefits.

The claimant now contends that she had good cause for quitting because she believed that reporting the incidents of sexual harassment to her immediate supervisor would have been futile. The claimant also asserts that the testimony regarding her claims of sexual harassment, sex discrimination and a unilateral change in employment conditions constitute substantial evidence when taken as a whole to support a finding that necessitous and compelling reasons existed for her to voluntarily terminate the employment relationship.

The scope of review by this court is limited to a determination of whether one's constitutional rights were violated, whether an error of law was committed, or whether any findings of fact made by the board are not supported by substantial evidence. *Estate of McGovern v. State Employees' Retirement Board*, 512 Pa. 377, 517 A.2d 523 (1986). The board's findings are "conclusive on appeal so long as the record, taken as a whole, contains substantial evidence to support those findings." *Taylor v. Unemployment Compensation Board of Review*, 474 Pa. 351, 378 A.2d 829 (1977).

The first issue is whether substantial evidence supports the claimant's contention that the employer unilaterally changed her work conditions, resulting in an overall pay reduction when compared to male employee compensation. The record shows that the claimant's base salary was greater than half of the retail store sales managers' base salary. This higher base pay compensated the claimant for the difference in pay despite the fact that the retail managers received bonuses and other incentives. Additionally, the record shows that the employer instituted a bonus program to benefit the claimant in her position as product line manager.

The employer, following a reorganization in its office, did increase the claimant's responsibilities. However, the record further indicates that the employer compensated the claimant for the increased responsibility by awarding her a ten percent

raise in pay. The claimant accepted the increased responsibility and the pay raise without opposition until the time that she filed for unemployment compensation benefits.

Thus, substantial evidence supports the board's findings and conclusion that the claimant failed to establish that the employer unilaterally changed, in a sexually discriminatory manner, the terms and conditions of the claimant's employment.

The second issue is whether the repeated incidents in this case of offensive, sex-related comments at the work place constitute a compelling and necessitous cause to voluntarily terminate employment.

■ In unemployment compensation cases, the claimant has the burden of proving that she terminated an employment relationship for necessitous and compelling reasons by showing that her conduct was consistent with common sense and prudence. *Colduvell v. Unemployment Compensation Board of Review*, 48 Pa.Commonwealth Ct. 185, 408 A.2d 1207 (1979). This court has held that sexual harassment may qualify as a necessitous and compelling reason for voluntarily terminating the employment relationship provided that a claimant made reasonable and prudent attempts to alleviate the harassment. *Homan v. Unemployment Compensation Board of Review*, 107 Pa.Commonwealth Ct. 172, 527 A.2d 1109 (1987).

■ Significantly, the employer's sexual harassment policy instructs those employees who believe that they are the subject of sexual harassment to report the incident to "their supervisor or if they want, they may report the incident to the corporate administrator or their assistant." The responsibility of receiving and addressing complaints relating to sexual harassment is specifically delegated by the employer to all immediate supervisors, or the corporate administrator or the corporate administrator's assistant. Thus, knowledge on the part of the employer is imputed when any one of its upper-level employees is aware that an incident involving sexual harassment has occurred in the work place.

■ The undisputed facts in the record establish that three incidents of offensive sexually-related conversation occurred involving the claimant. A co-worker who, at the time of the incident, had no supervisory authority over the claimant perpetrated the first episode (the oral sex comment). The employer's regional manager, who, as an upper-level employee, had direct authority over the claimant and her ability to transfer within the organization, perpetrated the other two episodes (relating to the claimant's daughter).

The record indicates that the claimant's immediate supervisor was present and witnessed the second incident of sexually-explicit conduct. Because the immediate supervisor observed, but did not react to, blatant harassment, the claimant had every reason to believe that reporting that incident would have produced no satisfactory result. The fact that upper-level employees were perpetrating and witnessing the harassment also supports why the claimant was reticent to go over the head of the regional manager.

When the claimant requested that she be placed on the retail sales list so that she would be given an opportunity to transfer to one of the employer's retail establishments, she again became the target of sexual harassment when the employer's regional manager threatened to use his ability to keep her off of the list unless the claimant offered this manager "one night" with the claimant's daughter.

Although a working definition of "harassment" is subjective, statements that the claimant performed oral sex to get a promotion and that the claimant, as a mother, must provide her daughter to a co-worker in exchange for having a request granted, do not fall within a gray area of whether the claimant was harassed. Those comments, stated by management level employees and in the context with which they were made, go beyond conduct that *must* be tolerated in a work place.

Because the claimant's immediate supervisor had knowledge of the sexual harassment, the employer also had knowledge. Therefore, the board erred in finding that the employer was not aware of the sexual harassment. Thus, the board erred in

determining that the claimant did not have a necessitous and compelling reason to justify a voluntary termination of the employment relationship.

Accordingly, the decision of the board is reversed and benefits are awarded.

## ORDER

NOW, August 18, 1994, the decision of the Unemployment Compensation Board of Review, dated October 20, 1993, at No. B–317959, is reversed.