**Cheryl D. ANDREWS, Petitioner,**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 13, 1997.

Decided July 21, 1997.

William H. Haller, Philadelphia, for petitioner.

James K. Bradley, Assistant Counsel, and Clifford F. Blaze, Deputy Chief Counsel, Harrisburg, for respondent.

Before COLINS, President Judge, FLAHERTY, J., and NARICK, Senior Judge.

FLAHERTY, Judge.

Cheryl Andrews (Claimant) petitions for review of an order from the Unemployment Compensation Board of Review (Board) affirming the decision of the referee to deny benefits pursuant to Section 402(b) of the Unemployment Compensation Law (Law).[1] We reverse.

Claimant began her employment as a packer on first shift with R & B, Inc. (Employer) in May 1996. Subsequently, Mr. Forest, a supervisor, told Claimant that she would have more job opportunity if she transferred from first shift to third shift. In June 1996, Claimant accepted the shift change so that she could advance from a packer to a line lead who supervises the packers. On September 18, 1996, Claimant was called into the office of her new supervisor, James Witherspoon (Witherspoon) for a performance evaluation. After Witherspoon gave Claimant an outstanding evaluation, Claimant inquired about her promotion to a line lead position. In response to Claimant's inquiry, Witherspoon stated that Claimant

---

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(b).

"would be able to get any position [she] wanted to get if [she] would just come over to. his house and sleep with him." (H.T. at 5). Claimant responded by saying, "I'll get mine the old fashioned way, I will earn it." (H.T. at 5).

On the same date, a co-worker, who held the position of line lead, began training Claimant for the position of line lead. Later that day, while Claimant was still receiving training, Witherspoon approached Claimant and said, "remember how you got that position" and "remember what you have to do," while he simultaneously rubbed his shoulder near Claimant's breast. (H.T. at 5). After September 18, 1996, Witherspoon repeatedly harassed Claimant with statements such as, "remember how you got that position," and "when are you coming over to my house?" (H.T. at 5). After consistently refusing Witherspoon's advances, Claimant was finally demoted on September 24, 1996, and a co-worker, named Donna, was promoted to fill the position of line lead on third shift. (H.T. at 5–6). Donna not only permitted Witherspoon to hug her and openly touch her buttocks, breasts, face, and hair but also returned these physical gestures in kind. (H.T. at 6). After Claimant was demoted, Witherspoon told Claimant that she "should have done what he asked [her] to do." (H.T. at 6).

On September 26, 1996, Claimant reported Witherspoon's offensive conduct to his supervisor, Paul Horace, and she requested a shift change do get away from Witherspoon and Donna, who was also verbally abusing Claimant by this time. (H.T. at 6–8). Claimant sought medical treatment for the stress and anxiety that resulted from being subject to persistent abuse at her job. (H.T. at 8). Claimant also met with second level supervisor Greg Churello wherein she informed Mr. Churello that she could no longer work under these conditions. (H.T. at 7). Claimant pleaded with Mr. Horace and Mr. Churello to transfer her to another shift on at least five different occasions. (H.T. at 7). Claimant also testified that she did not report these incidents to principal management officials because she feared that she would lose her job. (H.T. at 9). At the hearing before the referee, Claimant offered the testimony of a co-worker who testified that she was also a victim of Witherspoon's advances, and she witnessed Witherspoon harassing other women at work, including Claimant. The co-worker also testified that she never reported Witherspoon because the management structure at work was very intimidating and because Employer has a record of regularly firing employees in groups of approximately twenty at a time.

On October 8, 1996, Claimant voluntarily ceased reporting to work, and she was subsequently notified by Employer that she was being laid off effective October 25, 1996. The Philadelphia North Job Center issued a notice of determination, dated November 13, 1996, wherein it denied benefits. Claimant subsequently appealed, and after a full hearing, which Employer failed to attend after receiving proper notice, the referee affirmed the denial of benefits. The Board affirmed.

Claimant raises the following issues for our consideration: (1) whether the Board erred in finding that Claimant failed to notify employer that she was being sexually harassed by Witherspoon; and (2) whether the Board erred in concluding that Claimant had a duty to report sexual harassment to her employer where her harasser, Mr. Witherspoon, was a management official of the Employer.[2]

Section 402 of the Law, 43 P.S. § 802, provides, in relevant part, the following:

2. The Board argues that Claimant waived the first issue because she neglected to include a specific objection relating to that issue in her petition for review. We disagree. Under the express provisions of Pa. R.A.P. 1513(a), the issue of whether Claimant provided notice to her employer was properly preserved for our review because it is a "subsidiary question fairly comprised" in the express objection in Claimant's petition for review, i.e., that Claimant had no duty to separately inform her employer because she repeatedly notified the supervisors who had been delegated the responsibility of resolving employment related problems by Employer. Claimant's legal theory is contingent upon and embraces a direct challenge to the Board's finding, that she failed to notify her employer, by asserting that she did notify Employer when she notified the supervisors upon whom Employer imputed the responsibility of resolving such disputes.

An employe shall be ineligible for compensation for any week-

. . . .

(b) In which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature, irrespective of whether or not such work is in "employment" as defined in this act. . . .

43 P.S. § 802(b). In the instant case, Claimant had the burden of proving that she quit for a necessitous and compelling reason. *Peddicord v. Unemployment Compensation Board of Review*, 166 Pa.Cmwlth. 676, 647 A.2d 295, 298 (1994). Additionally, Claimant was the only party to present any evidence of record because Employer failed to appear at the hearing even though it received proper notice. (H.T. at 1). Consequently, Claimant and her co-worker were the only individuals to testify at the hearing. (H.T. at 3–13). We have previously held that, where only the burdened party presents evidence and does not prevail before the Board, our review is limited to determining whether the Board committed any errors of law or capriciously disregarded competent evidence. *Herbert v. Unemployment Compensation Board of Review*, 131 Pa.Cmwlth. 601, 571 A.2d 526, 527 (1990).

■ Claimant challenges the Board's finding that she "did not report [her] alleged sexual harassment to the employer." (Finding No. 3). Claimant argues that the record is replete with unrebutted evidence that Claimant took reasonable and prudent steps to alleviate the harassment and preserve her employment by repeatedly reporting Witherspoon's conduct to other supervisors, including Witherspoon's supervisor, and by repeatedly requesting a shift change.[3] We agree.

■ Sexual harassment can be a necessitous and compelling reason for voluntarily terminating one's employment if the "claimant made reasonable and prudent attempts to alleviate the harassment." *Peddicord*, 647 A.2d at 298. Our Supreme Court stated that necessitous and compelling cause for voluntarily leaving one's employment "results from circumstances which produce pressure to terminate employment that is both real and substantial, and which would compel a reasonable person under the circumstances to act in the same manner." *Taylor v. Unemployment Compensation Board of Review*, 474 Pa. 351, 358–59, 378 A.2d 829, 832–33 (1977). In *St. Barnabas, Inc. v. Unemployment Compensation Board of Review*, 106 Pa.Cmwlth. 191, 525 A.2d 885 (1987), we stated that, "in order to prove that a claimant has used common sense in voluntarily quitting as a result of sexual harassment, a claimant must show that she made her employer aware of the harassment." *Id.*, 525 A.2d at 887.

In *Peddicord*, the Board affirmed a referee's denial of benefits to a claimant who voluntarily quit her employment due to sexual harassment. The claimant in *Peddicord* was sexually harassed by her regional manager in front of her immediate supervisor. *Peddicord*, 647 A.2d at 296–97. The employer in *Peddicord* had a written sexual harassment policy which stated that victims of sexual harassment should report the incident to their supervisor or to the corporate administrator. *Id.* at 297. The claimant quit without providing notice of the sexual harassment and without stating any reasons for her resignation. *Id.*

In *Peddicord*, we recognized that the employer's sexual harassment policy specifically delegated the responsibility of receiving and addressing complaints to the immediate supervisors. *Id.* . at 298. We stated that "knowledge on the part of the employer is imputed when any one of its upper-level employees is aware that an incident involving sexual harassment has occurred in the work place." *Id.* We also stated that "[b]ecause the claimant's *immediate* supervisor had knowledge of the sexual harassment, the employer also had knowledge." *Id.* (emphasis added).

In the case *sub judice*, Employer had a written policy which similarly delegated the responsibility of receiving and addressing

---

3. Because the two issues raised by Claimant are interrelated, we will dispose of them concurrently in the same discussion.

complaints of any nature to the immediate supervisors. This policy stated the following:

> Section 60. Dispute Resolution. It is only natural in any working environment for employees to occasionally experience a work-related problem. The best way to resolve it is with the employee's supervisor, who will assist in solving the problem informally. For those times when the supervisor cannot solve a work-related problem, the employee may talk with his or her department head or the Human Resource Department.

(Certified Record at 7).

Employer had the opportunity to deny Claimant's allegations of sexual harassment, but it failed to do so. The testimony of Claimant and her co-worker is uncontradicted, and it was not found incredible. Claimant's testimony reveals that she provided more notice to Employer than the claimant in *Peddicord.* Claimant and her co-worker testified that Claimant and others were victims of repeated sexual harassment by James Witherspoon while working for R & B, Inc. This testimony also reveals that Claimant notified her employer within the meaning of *Peddicord* because her supervisors were the agents of her employer for resolving work-related disputes. Whereas the immediate supervisor in *Peddicord,* and therefore the employer, was deemed to have notice of the claimant's sexual harassment merely because the claimant knew that he witnessed the harassment, Claimant, in the instant matter, affirmatively informed Witherspoon's supervisor and a second-level supervisor of the sexual harassment. Claimant's immediate supervisor was the individual who was harassing her. Claimant was consequently forced to notify other supervisors from whom she received no satisfaction. Claimant, like the claimant in *Peddicord,* had actual knowledge that several supervisors knew of the abuse to which Witherspoon subjected her. Therefore, under *Peddicord,* Employer is also deemed to have been notified that Claimant was the victim of sexual harassment.

Although Employer's dispute resolution policy, on its face, encouraged employees to report problems such as sexual harassment, there is no evidence that Employer facilitated the communication of such problems. Employer did not have a mechanism to make its managers and supervisors accessible or responsive to employees. The evidence of record, however, does demonstrate that Employer's firing practices discouraged employees from reporting work-related problems. Additionally, because Claimant worked third shift, many principal management officials were not available during her work hours. Claimant, however, did make the effort to confront Mr. Churello on her own time when he was available during normal business hours. As a practical matter, there is an emotional impact on the victim of sexual harassment. The anxiety and humiliation associated with disclosing sexual harassment and the name of the harasser, coupled with Claimant's fear of losing her job in an environment without support, limited her ability to confront principal management officials, with whom she normally had little, if any, contact, and to provide the type of notice that we would expect in another situation.

We, therefore, hold that the Board erred in disregarding the overwhelming evidence that Claimant notified Employer and in concluding that Claimant failed to meet her burden of establishing a necessitous and compelling reason for voluntarily terminating her employment by failing to notify her employer in an attempt to preserve her job. Claimant had no duty to notify principal management officials of Employer when supervisors, with the delegated responsibility to resolve employment disputes, already knew of the harassment and Claimant's repeated requests for a shift change, yet failed to act. The stress and anxiety imposed upon Claimant by having to report to work and be subject to persistent abuse after providing notice to her employer while fearing the loss of her job was a necessitous and compelling reason to quit her employment that resulted from circumstances which produced pressure upon Claimant to terminate her employment that was "both real and substantial and which would compel a reasonable person under the circumstances to act in the same manner." *Taylor,* 474 Pa. at 358–59, 378 A.2d at 832–33.

Accordingly, the order of the Board is hereby reversed.

### ORDER

AND NOW, this 21st day of July, 1997, the order of the Unemployment Compensation Board of Review, at Decision No. B–358240, dated January 31, 1997, is hereby reversed.