**COLLIER STONE COMPANY,**
Petitioner

v.

**UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,**
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 18, 2005.

Decided June 7, 2005.

Theresa B. O'Brien, Pittsburgh, for petitioner.

Judith M. Gilroy, Asst. Counsel and Gerard M. Mackarevich, Deputy Chief Counsel, Harrisburg, for respondent.

BEFORE: McGINLEY, Judge, and COHN JUBELIRER, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge COHN JUBELIRER.

Collier Stone Company (Employer) petitions the Court for review of an order of the Unemployment Compensation Board of Review (Board) that reversed the Referee's determination to disallow benefits to Lisa A. Konkeil (Claimant) under Section 402(b) of the Unemployment Compensation Law (Law).[1] The Board found that Claimant had a necessitous and compelling reason to quit her employment because of ongoing harassment.

■ The Unemployment Compensation Service Center (Service Center) initially denied benefits pursuant to Section 402(b) of the Law, which Claimant appealed. After a hearing on August 18, 2004, the Referee made findings of fact and issued a Decision/Order affirming the decision of the Service Center. Claimant filed a timely appeal to the Board, which, ultimately, reversed the Referee's decision and found Claimant eligible for benefits. The Board, taking no additional testimony, made the following findings of fact:

1. The claimant began work for Collier Stone Company on July 6, 2003 and last worked on April 26, 2004 as a full-time customer service assistant at a final rate of pay of $10.00 per hour.

2. On three separate occasions beginning in September of 2003, co-workers of the claimant made suggestive remarks and/or behaved in a lewd and lascivious manner toward the claimant during work hours.

3. The claimant complained about these incidents. Afterwards, the other employees began avoiding the claimant and not answering her work related pages.

4. On February 20, 2004, a co-worker of the claimant made a lewd gesture in the office during working hours. On February 22, 2004, the claimant filed a formal complaint with management of employer. On February 23, 2004, the employer conducted a thorough investigation of the claimant's allegations and determined that no evidence existed other than the allegation itself to support the allegation.

5. On February 26, 2004, the employer distributed an Urgent Action Memo to all employees of the company in their paychecks indicating that the employer had a zero tolerance policy for sexual harassment and that any acts of sexual harassment would result in immediate dismissal.

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b).

6. The harassment continued after the employer issued the memo.

7. On April 24, 2004, the claimant was in her vehicle, making a turn into the worksite. A coworker in another vehicle almost hit her while gesturing that the claimant was crazy and putting a cell phone cord around his neck to demonstrate that she was hanging herself.

8. The claimant then voluntarily quit because of the continued harassment.

(Bd. Finding of Facts (FOF) ¶¶ 1–8.) The Board further found that, although Employer took steps to address Claimant's complaints, they proved to be insufficient. (Bd. at 2.) It also found Claimant's testimony credible that her co-workers retaliated against her because they knew she had complained. *Id.* Finally, the Board found that the incident on April 24, 2004 "showed that it was no longer feasible for her to work there." *Id.* Thus, it determined that Claimant had proven a necessitous and compelling reason to quit and awarded benefits. This appeal ensued.[2]

 In an unemployment compensation case, the Board is the ultimate fact finder and is empowered to make credibility determinations. *Peak v. Unemployment Comp. Bd. of Review*, 509 Pa. 267, 501 A.2d 1383 (1985). In making those determinations, the Board may accept or reject the testimony of any witness in whole or in part. *Greif v. Unemployment Comp. Bd. of Review*, 68 Pa.Cmwlth. 437, 450 A.2d 229, 230 (1982).

Employer first argues that the Referee's determination that Claimant did not have necessitous and compelling reasons to voluntarily quit her employment is supported by substantial evidence because Claimant failed to contest the "fact" that she left a "bizarre" voice mail message on Employer's cellular telephone on April 24, 2004,[3] and that she was satisfied with the manner by which Employer handled her February 2004 complaints of sexual harassment. (Employer Br. at 17–18.) However, these "facts" were not the subject of findings by the Referee or the Board. Moreover, the inquiry is whether the *Board's* findings are supported by substantial evidence.

Next, Employer argues that the Board erred in disregarding Referee's FOF ¶ 5 without clearly identifying the basis for rejecting the finding. In attacking the efficacy of the Board's action, Employer relies on the seminal case of *Treon v. Unemployment Comp. Bd. of Review*, 499 Pa. 455, 453 A.2d 960 (1982). In *Treon*, the Board, on appeal, disregarded the uncontradicted evidence of the only witness who testified without explaining why it did so. There, our Supreme Court stated that the Board's fact finding power is not unlimited and held that where the Referee's findings are based on *consistent and uncontradicted* evidence, the Board is not free to disregard those findings without stating its reasons for doing so. *Id.* at 461, 453 A.2d at 962.

Here, the Board adopted four of the Referee's five findings. (Referee FOF ¶¶ 1–4; Bd. FOF ¶¶ 1, 2, 4, 5.) The only finding that the Board did not adopt was the Referee's FOF ¶ 5 which states, "[b]etween February 26, 2004 and claimant's

---

2. When reviewing an order from the Board, this Court may only determine whether the Board committed an error of law, whether constitutional rights were violated, or whether necessary factual findings are supported by substantial evidence. *Nolan v. Unemployment Comp. Bd. of Review*, 797 A.2d 1042, 1045 n. 4 (Pa.Cmwlth.2002).

3. Employer claims that the night before Claimant quit, she left a strange message on Employer's answering machine while she was inebriated. Employer asserts that it was this "embarrassing" act that prompted Claimant's quit. (N.T. at 43–44.)

resignation on April 26, 2004, the claimant made no further complaints of harassment to management of the employer. On April 26, 2004, the claimant voluntarily left her position because she felt she could no longer work in a hostile environment characterized by sexual harassment."

The Board focused on Claimant's overall conduct of continually reporting incidents of harassment and her coworkers' ongoing failure to work with her, by not answering her work pages, and so making it difficult for her to carry out her job. Claimant *credibly testified* that, even after Employer spoke to her coworkers about the harassment and about answering her pages, the inappropriate conduct continued. (N.T. at 26–28.) After receiving yet another serious complaint of sexual harassment from Claimant about a different employee in February 2004, Employer changed Claimant's work duties. *Id.* at 28. While there may not have been a "formal" complaint lodged by Claimant with regard to ongoing sexual harassment after this February incident, Employer was on notice that the sexual harassment by numerous male employees had been ongoing since September 2003. Thus, we conclude that the Referee's FOF ¶ 5 is not based on consistent and uncontradicted evidence and the Board could disregard it. *Treon.*

Next, Employer asserts that the Board erred in concluding that there was substantial evidence to support its determination that Claimant had necessitous and compelling reasons for her quit. "Substantial evidence" is that which a reasonable mind, without weighing the evidence or substituting its judgment for that of the fact finder, might accept as adequate to support the conclusion reached. *Centennial Sch. Dist. v. Dep't of Educ.*, 94 Pa.Cmwlth. 530, 503 A.2d 1090, 1093 n. 1 (1986), *affirmed*, 517 Pa. 540, 539 A.2d 785 (1988).

Where a claimant has voluntarily quit employment, in order to obtain benefits, she must show that she left her employment for necessitous and compelling reasons. *Taylor v. Unemployment Comp. Bd. of Review*, 474 Pa. 351, 378 A.2d 829 (1977). In order to show a necessitous and compelling reason to quit, the claimant must show that circumstances existed which produced real and substantial pressure to terminate employment; such circumstances would compel a reasonable person to act in the same manner; the claimant acted with ordinary common sense; and the claimant made a reasonable effort to preserve her employment. *Comitalo v. Unemployment Comp. Bd. of Review*, 737 A.2d 342, 345 (Pa.Cmwlth.1999). Sexual harassment may constitute a necessitous and compelling reason to quit employment. *Id.* at 345. In such a situation, a claimant need not "notify the employer of each and every incident of harassment." *Unclaimed Freight Co. v. Unemployment Comp. Bd. or Review*, 677 A.2d 377, 379 (Pa.Cmwlth.1996). Rather, a claimant will remain eligible for benefits as long as she has "taken 'common sense' action that [gives] the employer an opportunity to understand the nature of [her] objections and to take prudent steps to resolve the problem." *Id.* Furthermore, "there is a certain level of conduct that an employee will not be required to tolerate and the Court will not place all responsibility upon an employee to resolve his or her work dilemma. Ultimately the employer bears the responsibility for eliminating harassment against employees in the workplace." *Comitalo*, 737 A.2d at 345.

Claimant argues that Employer's reaction after it received Claimant's complaints was not sufficient to alleviate the harassment. She contends that Employer never disciplined anyone in connection with her complaints, and that the memorandum

Employer distributed to all employees did not stop the final act of harassment, which she argues, was in retaliation for her complaints. Further, she asserts that she had no reason to believe that Employer's response to the incident on April 24th would have been any more effective than its response to the other incidents. Claimant argues that *Comitalo* is analogous to the case at bar.

In *Comitalo*, this Court granted benefits to the claimant, finding that she had a necessitous and compelling reason to quit due to harassment by coworkers. There, the claimant experienced repeated sexual harassment from her manager, which involved lewd and suggestive comments to her, touching and grabbing her in an offensive manner and, on one occasion, pinning her against a wall. The claimant's husband complained and the employer took no action. Upon further complaints, the claimant was told to contact human resources, which she did. An investigation ensued where it was conclusively found that the sexual harassment had in fact occurred. The manager was suspended and ordered to transfer to another store. During the manager's suspension, he returned to the employment in a drunken state and accused the claimant of lying. She did not report this incident. When a new manager was assigned to her store, he repeatedly yelled at her during his first two days at work, apparently because he was annoyed that he had to be transferred to this store. Other employees criticized the claimant as well for filing the complaint. When the claimant told the employer about the behavior and offered to resign her position, the employer told her to stick with it, but did not offer to protect the claimant from further harassment. The Board reversed the referee and held that the claimant was not entitled to benefits because the employer took steps to resolve the sexual harass-

ment by transferring the first manager and because she did not give the employer time to remedy her complaints about the second manager and other employees. However, we reversed the Board because the evidence did not support the Board's finding that the employer took proper steps necessary to enforce its policy to eliminate the harassment. *Id.* at 346. Specifically, the employer, after being advised of the complaints, which were supported by the record, did not take immediate action to protect the claimant from further harassment. *Id.* at 345.

In the case *sub judice*, the Board found that Claimant was harassed by coworkers on three separate occasions beginning in September, 2003. (Bd. FOF ¶ 2.) The evidence of record establishes that the first incident of harassment occurred in September. Claimant complained to Employer that two of her co-workers, Mike Dimeo and Craig Singer, were looking down her shirt, making comments about parts of her body, and were not responding to her work pages. (N.T. at 25–26.) Employer did not conduct an investigation because Claimant wanted to handle the situation herself. (N.T. at 11.) However, Employer did testify that Claimant complained frequently about these particular coworkers, and although Employer did not conduct a thorough investigation, Employer did talk to the coworkers and instructed them to answer Claimant's pages because she was the dispatcher. (N.T. at 12.) Claimant's second complaint of harassment dealt with a different coworker, Matt Zeman, who she alleged called her a "bitch," "stupid ass," and "dumb," and who also sang a song with a sexual connotation to her. (N.T. at 13, 27.) The record is unclear what steps, if any, were taken following the complaint. However, the record does contain Claimant's credible testimony that this coworker's conduct did not cease, even up and

until the very last day of her employment. (N.T. at 28.) The third incident, which occurred on February 20, 2004, involved an allegation by Claimant that a different co-worker, Scott Hill, grabbed and shook his genitals in front of her when he went to her office to pick up his paycheck. Claimant filed a formal complaint with Employer on February 22, 2004. The very next day, Employer conducted an investigation of the allegations where they met with Hill and asked him to recollect what incidents occurred when he picked up his paycheck. Hill stated that he picked up his paycheck, made small talk with Claimant and left the office. Only *after* Hill explained what happened, did Employer "elude" [sic] to the fact that there were allegations that he had conducted himself "improperly." (N.T. at 39.) After the investigation, Employer determined that no evidence, other than her allegation, existed to support her claim. (Bd. FOF ¶ 4.) Specifically, there were no witnesses to the incident, and Hill was a ten-year employee, who had never been the subject of a complaint before. Employer stated that it was because of these factors that it did not terminate him. Instead, a few days after the investigation, on February 26, 2004, Employer distributed an Urgent Action Memo to all employees of the company in their paychecks, indicating that Employer had a zero tolerance policy for sexual harassment and that any acts of harassment would result in immediate dismissal. (Bd. FOF ¶ 5.) Finally, Employer, in order to ensure that Claimant would have no more contact with Hill, changed its procedures so that employees would pick up their paychecks at a different office, which, in turn, took away one of Claimant's job responsibilities. (N.T. at 17, 28.)

Review of the law in this area reveals that the cases seem to fall into two categories: those where a claimant does not notify management of the harassment, or does not follow proper reporting procedures, in which case benefits are denied,[4] and those in which she does notify management, but management does nothing or nothing effectual, or where notification would be "fruitless," in which cases benefits are granted.[5]

The evidence of record establishes that Claimant complained to Employer on several occasions about the sexual harassment that she was subjected to by different coworkers. The many complaints lodged by Claimant originally began in September 2003. After Claimant complained to Employer about the second incident, the harassment continued. (N.T. at 28.) Apparently, Employer responded with a formal investigation *only* after the third incident. Even after Employer took steps to address this incident, the harassment continued. (Bd. FOF ¶ 6.) Employer was aware of Claimant's complaints of harassment and that Claimant's coworkers were not responding to her pages, thereby making her job difficult to carry out. Although Employer testified that it had a sexual harassment policy, it did not introduce the policy into evidence, nor discuss what procedures it contained for reporting an incident of sexual harassment. Absent any evidence of a policy that specified what steps Claimant was to take, we cannot agree that Claimant failed to properly

---

4. See, e.g., Hussey Copper Ltd. v. Unemployment Comp. Bd. of Review, 718 A.2d 894 (Pa. Cmwlth.1998); Martin v. Unemployment Comp. Bd. of Review, 749 A.2d 541 (Pa. Cmwlth.2000).

5. See, e.g., Andrews v. Unemployment Comp. Bd. of Review, 698 A.2d 151 (Pa.Cmwlth. 1997); Danner v. Unemployment Comp. Bd. of Review, 66 Pa.Cmwlth. 252, 443 A.2d 1211 (1982); Peddicord v. Unemployment Comp. Bd. of Review, 166 Pa.Cmwlth. 676, 647 A.2d 295 (.1994).

notify Employer of the harassment. While Employer was aware of Claimant's complaints, and did take some steps to address them, the harassment in the workplace continued for eight months without being rectified by Employer. We, therefore, affirm the Board's decision because there is substantial evidence that: 1) the harassment continued unabated after Employer was notified of the harassment, 2) Employer did not take effective steps in response to Claimant's complaints and, 3) it was not feasible for Claimant to continue working in that environment.[6]

Based on the foregoing opinion, we affirm the order of the Board.

### ORDER

**NOW,** June 7, 2005, the order of the Unemployment Compensation Board of Review in the above-captioned matter is, hereby, affirmed.

---

**6.** Employer also argues that there was insubstantial evidence of record to support a finding that Claimant's position was being "phased out," thus, entitling her to benefits. Because the Board made no such finding with regard to Claimant's position being "phased out," and because Claimant did not file a cross appeal arguing the same, we need not reach this issue.