# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tamara A. Forsyth,                          :
                          Petitioner        :
                                            :
         v.                                 :    No. 127 C.D. 2015
                                            :    Submitted: August 28, 2015
Unemployment Compensation                   :
Board of Review,                            :
                          Respondent        :

BEFORE:    HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
           HONORABLE ROBERT SIMPSON, Judge
           HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**                    **FILED: October 16, 2015**


Tamara A. Forsyth (Claimant) petitions for review from the order of the Unemployment Compensation Board of Review (Board) that determined she was ineligible for unemployment compensation (UC) benefits pursuant to Section 402(b) of the UC Law (Law) (voluntary quit).[1] Claimant contends the Board erred in determining she quit without cause of a necessitous and compelling nature. She argues her direct supervisor created intolerable working conditions in retaliation for her complaints about his behavior. Discerning no error below, we affirm.


## I. Background

Claimant worked for East Pikeland Township (Employer) as an administrative assistant for the chief of police (Chief). In October 2013, Claimant

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. §802(b).

was in a motor vehicle accident and needed back surgeries and epidural injections. She took leave while receiving treatment. On February 2, 2014, the Chief discharged Claimant, advising that he could not wait for her recovery. Claimant was released by her doctor to return to work on February 20, 2014. After Claimant's attorney contacted Employer threatening a disability discrimination claim, Claimant was called back to work on May 12, 2014.

After returning to work, the Chief kept his door closed and maintained minimal conversations with Claimant. He also delegated parts of Claimant's job to other employees. Claimant reported the Chief's treatment of her to Employer's Board of Supervisors (Supervisors). The Supervisors then discussed the matter with the Chief. The Chief was irate and warned Claimant against going over his head.

Claimant reported his reaction to her attorney, who contacted the Supervisors. The Supervisors investigated the matter. As a result of that investigation, the Supervisors suspended the Chief for two months.

After notifying Claimant that the Chief was returning to work, the Supervisors offered her a position outside the police department. Instead of accepting the offer, Claimant resigned her position before the Chief returned to work. In her resignation letter, Claimant stated, "[b]ased on [Employer's] decision … to reinstate [the Chief] following the discriminatory and retaliatory conduct against me, I feel that I cannot tolerate working for, with or around him." Bd. Op., 1/9/15, Finding of Fact (F.F.) No. 20. Claimant then applied for benefits, which the local service center denied under Section 402(b) of the Law. Claimant appealed.

A referee held a hearing where Claimant, represented by counsel, testified, and Employer appeared by counsel only. The referee affirmed, reasoning Claimant did not establish a necessitous and compelling reason to leave work as required by Section 402(b) of the Law. Claimant appealed to the Board.

The Board affirmed the referee, issuing 22 findings of fact and its own decision regarding Claimant's ineligibility for benefits. The Board made the following pertinent findings:

> 8. After [Claimant's return] to work, the [Chief] would keep his door closed, he would have minimal conversations with [Claimant] and he delegated parts of [Claimant's] job to other employees.
>
> 9. [Claimant] told [a] township supervisor about the [Chief's] conduct and he would check in once in a while to see how she was doing.
>
> 10. [Claimant] reported the [Chief's] conduct to the [Supervisors].
>
> 11. On July 2, 2014, the Supervisors met with the [Chief] and afterwards the [Chief] asked [Claimant] to go to lunch to try to clear the air.
>
> 12. After the lunch, the [Chief] pointed his finger in [Claimant's] face and said, "how dare you go over my head, how dare you report me. I'm the one that gives you raises. I'm the one that gives you time off, you know, you hurt me, you went over my head."
>
> [***]
>
> 14. [Claimant] contacted her attorney about the conversation with the [Chief], who then contacted the [Supervisors].

3

15. [Employer] conducted an investigation and talked to [Claimant].

16. On July 3, 2014, the [Supervisors] suspended the [Chief] for two (2) months.

17. [Claimant] wanted the [Chief] not to return back to work with [Employer].

18. On September 2, 2014, the [Supervisors] advised [Claimant] that the [Chief] was returning to work.

19. [Employer] offered [Claimant] another position outside the police department.

20. [Days later], [Claimant] submitted a resignation letter ….

Bd. Op., F.F. Nos. 8-12, 14-20.


The Board reasoned Claimant did not establish discriminatory or retaliatory conduct by the Chief. The Board explained, "[Claimant] … only testified that the [Chief] delegating some of her job duties away was retaliatory." Bd. Op. at 3. That the Chief "closed his door more often and had minimal conversations with her … [did not] establish an intolerable work atmosphere." Id. Regardless of whether Claimant established an intolerable work atmosphere, the Board determined:

> [Claimant] also failed to establish that she made reasonable efforts to preserve her employment. [Claimant] did not establish that [Employer's] actions against the [Chief] were ineffectual. [Employer] had not previously suspended the [Chief] for two (2) months and [Claimant] did not wait for his return to see if his behavior had changed. Further, [Employer] offered [Claimant] other employment but [Claimant] failed to pursue it prior to quitting.

4

Bd. Op. at 4.  Claimant now petitions for review.[2]

On appeal,[3] Claimant argues the Board erred as a matter of law in determining that her work environment did not constitute a necessitous and compelling reason to quit.  She claims the Chief treated her "in such poor fashion that it could only be viewed as a systematic campaign of [sic] undertaken with the intent to make her uncomfortable and ultimately force her to resign …."  Pet'r's Br. at 8.  Claimant contends her unwillingness to continue working with the Chief was reasonable.  She also disclaims responsibility for allowing Employer an opportunity to prove the effectiveness of its disciplinary measures.  Further, she denies Employer offered her other employment, asserting such a finding is unsupported by the record.

## II. Discussion

Section 402(b) of the Law provides that an employee shall be ineligible for compensation for any week "[i]n which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature …." 43 P.S. §802(b).  An employee who claims to have left employment for a necessitous and compelling reason bears the burden of proof.  Middletown Twp. v. Unemployment Comp. Bd. of Review, 40 A.3d 217 (Pa. Cmwlth. 2012).

---

[2] Our review is limited to determining whether the necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated.  Doyle v. Unemployment Comp. Bd. of Review, 58 A.3d 1288 (Pa. Cmwlth. 2013).  Substantial evidence is evidence which a reasonable mind would accept as adequate to support a conclusion.  Umedman v. Unemployment Comp. Bd. of Review, 52 A.3d 558 (Pa. Cmwlth. 2012).

[3] Although it intervened, Employer did not file a brief.

To prove a necessitous and compelling reason for leaving employment, a claimant must demonstrate the following: (1) circumstances existed which produced real and substantial pressure to terminate employment; (2) such circumstances would compel a reasonable person to act in the same manner; (3) the claimant acted with ordinary common sense; and, (4) the claimant made a reasonable effort to preserve her employment. Solar Innovations, Inc. v. Unemployment Comp. Bd. of Review, 38 A.3d 1051 (Pa. Cmwlth. 2012). An employer has no burden of proof in a voluntary quit case. Johnson v. Unemployment Comp. Bd. of Review, 869 A.2d 1095 (Pa. Cmwlth. 2005).

The question of whether a claimant has a necessitous and compelling reason to terminate employment is a question of law reviewable by this Court. Middletown Twp. "[M]ere dissatisfaction with the employer's policies or procedures alone is not cause of a necessitous and compelling nature to voluntarily terminate employment." Tom Tobin Wholesale v. Unemployment Comp. Bd. of Review, 600 A.2d 680, 683 (Pa. Cmwlth. 1991). Further, disagreement with a disciplinary policy is not a compelling reason to leave employment. Oller v. Unemployment Comp. Bd. of Review, 426 A.2d 741 (Pa. Cmwlth. 1981).

Harassment may constitute a necessitous and compelling nature to quit when a claimant makes attempts to resolve the situation. Comitalo v. Unemployment Comp. Bd. of Review, 737 A.2d 342 (Pa. Cmwlth. 1999). However, to establish a necessitous and compelling cause, "a claimant must show that she made her employer aware of the harassment." St. Barnabas, Inc. v. Unemployment Comp. Bd. of Review, 525 A.2d 885, 887 (Pa. Cmwlth. 1987).

Claimant argues she had no obligation to preserve employment with Employer based on our decision in Comitalo. There, a supervisor sexually harassed the claimant. After receiving repeated complaints, the employer transferred the supervisor to another location. The supervisor's replacement subjected the claimant to constant criticism, which was joined by her co-workers, who disapproved of her reporting the prior supervisor. The claimant advised the employer of the criticism. The employer took no action to stop the alleged retaliation. Instead, the employer asked the claimant to "take a few days off and … stick it out." Comitalo, 737 A.2d at 344. The claimant did not return to work. The referee found the employer did not take any action to remedy the harassment. Although the Board disagreed, and denied benefits, this Court reversed the Board.

Important to our analysis in Comitalo, we recognized an employer bears the burden to take action in response to a claimant's complaint about harassment. We reasoned the employer did not take action to prevent further harassment by suggesting the claimant take off work and allow things to settle down. The harassment in Comitalo started as sexual harassment, and then continued as retaliation in response to the claimant's reporting of the initial harassment. Thus, this Court concluded the employer did not take proper steps to enforce its harassment policy and to protect the claimant from further abuse.

Comparing the current circumstances to those in Comitalo, we discern material differences. Here, Claimant did not establish a hostile work environment. The Board did not find that the Chief's treatment of her constituted harassment. The record reflects only that the Chief shut his door, reduced his conversation with

7

Claimant, and was no longer friendly with her. Referee's Hr'g, Notes of Testimony (N.T.), 10/27/14, at 12, 14, 26; see Referee's Hr'g Tr. at Ex. 2. That the Chief did not talk with her often and closed his door more does not create a hostile work environment compelling her to quit. Bd. Op. at 3; see Ann Kearney Astolfi, DMD PC v. Unemployment Comp. Bd. of Review, 995 A.2d 1286, 1288 (Pa. Cmwlth. 2010) (denying benefits under Section 402(b) as claimant established only resentment after supervisor yelled at her; that work environment was "uncomfortable" does not rise to the level of an intolerable work atmosphere).

Also in contrast to Comitalo, Employer here responded to Claimant's complaints regarding the Chief's conduct. When Claimant informed the Supervisors that the Chief yelled at her for going over his head, Employer did not advise Claimant to take a few days off and allow matters to settle like the employer in Comitalo. Rather, Employer undertook an investigation. Then, it disciplined the Chief as a means of addressing Claimant's concerns. Accordingly, Employer undertook appropriate steps to remedy the situation.

Moreover, Claimant did not establish that she made reasonable efforts to retain her employment. St. Barnabas. Importantly, Claimant admitted that Employer offered her alternate employment. F.F. No. 19; N.T. at 25. Claimant resigned instead of accepting a transfer. F.F. No. 20; N.T. at 25.

Additionally, Claimant did not attempt to work with the Chief after he was disciplined. Id. at 17; see Referee's Hr'g Tr. at Ex. 4 (resignation letter). Claimant's disagreement with Employer's disciplinary decision does not rise to the

8

level of a necessitous cause to leave. <u>Ann Kearney Astolfi</u>; <u>Oller</u>. By leaving before the Chief returned, Claimant did not allow for the possibility that Employer's discipline was effective. <u>St. Barnabas</u>, 525 A.2d at 888 (reversing eligibility determination because claimant "submit[ed] her resignation without giving the [e]mployer the opportunity to solve the problem."). Therefore, she did not demonstrate the work environment continued after Employer attempted to remedy it by disciplining the Chief. For these reasons, we agree with the Board's determination that Claimant did not make reasonable efforts to preserve her employment.

### III. Conclusion

Because Claimant did not establish a necessitous and compelling reason for leaving employment, we affirm the Board.

_____
ROBERT SIMPSON, Judge

9

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tamara A. Forsyth,                          :
                        Petitioner          :
                                                   :
                 v.                              :   No. 127 C.D. 2015
                                                   :
Unemployment Compensation                   :
Board of Review,                            :
                         Respondent         :

## **O R D E R**

**AND NOW**, this 16th day of October, 2015, the order of the Unemployment Compensation Board of Review is **AFFIRMED**.

 

                                               _____
                                               ROBERT SIMPSON, Judge