**HUSSEY COPPER LTD., Petitioner,**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 21, 1998.

Decided Oct. 2, 1998.

Richard V. Sica, Pittsburgh, for petitioner.

David B. Washington, Harrisburg, for respondent.

Before McGINLEY and PELLEGRINI, JJ., and LORD, Senior Judge.

PELLEGRINI, Judge.

Hussey Copper Ltd. (Employer) appeals from a decision of the Unemployment Compensation Board of Review (Board) finding that Ingrid Williams (Claimant) was eligible for unemployment compensation benefits under Section 402(b) of the Unemployment Compensation Law (Law)[1] because she left

---

**1.** Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. 802(b). Section 402(b) of the Law provides in pertinent part:

her employment for a necessitous and compelling reason.

Claimant worked for Employer beginning in August 1996 as a scalper assistant operator and in February 1997, she began working with scalper operator Richard Fields (Fields). On August 3, 1997, while attempting to attach a table suspended in the air by a forklift to the scalper machine, a light fixture shattered above Claimant causing glass to rain down on her head and body. Believing that Fields had intentionally caused the light fixture to shatter above her, Claimant went to her supervisor, Tim Dorsey (Supervisor Dorsey), and told him that she was leaving; she never returned to work for Employer. Claiming that she had been sexually harassed on the job, Claimant applied for and was denied unemployment compensation benefits by the Beaver County Job Center. She then petitioned for a hearing before a Referee to challenge that determination.

At the hearing before the Referee, Claimant testified that Fields began to sexually harass her almost immediately after she began working with him and that the harassment occurred almost every day for the period they worked together. She stated that Fields would tell dirty jokes in her presence and draw her attention to him and then make sexually obscene gestures with his body. Claimant further stated that Fields would come up behind her and rub against her body or purposefully touch her breasts and buttocks. She testified that Fields would tell her that "he [his penis] was too big for her" and that he wanted to go to bed with her. Claimant indicated that she told Fields to stop but he would start laughing and say, "Oh, you know you liked it [him touching her body]." Although she and Fields worked at opposite ends of the scalper machine, Claimant testified that it did not prevent Fields from sexually harassing her because occasionally both would have to travel to the other end of the scalper machine to resolve

malfunctions. She stated that after she told Fields to stop sexually harassing her, he threatened to have her fired because he knew the owner of the mill. She also stated that on one occasion in July 1997, she had to go to the bathroom and when she returned, Fields began to curse at her stating that she was not doing her work. Claimant testified that in retaliation for going to the bathroom, Fields reported her to the plant manager, Brian Young (Plant Manager Young), complaining that she was not doing her job because she was taking frequent bathroom breaks.

Regarding Claimant's notification to Employer, Claimant testified that on June 6, 1997, she told Supervisor Dorsey about Fields' behavior but he just "brushed" her off. She stated that she also told Jim Svegel, general supervisor of the rolling department (General Supervisor Svegel), that she was being harassed and about Fields touching her body, and that he witnessed some of Fields' behavior; however, General Supervisor Svegel only told Fields to stop and nothing more. Claimant testified that when Fields reported her to Plant Manager Young, they were both called to his office on July 28, 1997, where he advised them of Employer's expectations of their behavior on the job and ordered them to resolve their differences or else they would be fired. She stated that when she tried to tell Plant Manager Young about Fields' sexual harassment, he refused to listen stating that he did not want to hear the specifics of what was going on between Claimant and Fields. Claimant testified that she felt that management ignored her complaints of sexual harassment.[2]

As to the shattering light fixture, Claimant testified that Fields purposely broke the fixture over her head because he was angry with her for being called to Plant Manager Young's office on July 28, 1997. She stated that Fields pulled an overhead cord really hard causing the light to shatter and rain

An employe shall be ineligible for compensation for any week—[i]n which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature, irrespective of whether or not such work is "employment" as defined in this act[.]

2. Claimant also testified that she reported the incidents to her union representative Bill Scott on the day before she quit working for Employer.

down glass all over her, and afterwards, went to Supervisor Dorsey and told him that she was leaving because she could not "take any more" of Fields.

As to her attempts to remedy the situation, Claimant testified that she tried to resolve the problems by talking to her supervisors and requesting to be moved to another area, but nothing ever resulted from her discussions. She stated that she did not report Fields' sexual harassment until June 1997 because she was afraid of losing her job. Claimant admitted that she was not aware of the sexual harassment reporting policy promulgated by Employer. She testified that on the advice of co-workers, after she left her employment, she telephoned Robert Peterson, vice president of industrial relations for Employer (Vice President Peterson), and told him that Fields had been sexually harassing her, telling dirty jokes and touching her breasts and buttocks. Claimant stated that Vice President Peterson cut her off and hung up stating that he should not have talked to her.

Regarding Claimant's claim of sexual harassment by Fields, Supervisor Dorsey testified that he was aware that Fields and Claimant did not get along and that he had to write them up on July 27, 1997, because they had an argument on the floor. He stated that he did not recall any meeting with Claimant on June 6, 1997, and did not recall telling Claimant that he did not want to hear her complaints of sexual harassment against Fields. General Supervisor Svegel testified that when he learned that Claimant and Fields did not get along, he called Claimant to a meeting alone about one week before the July 27, 1997 argument. He stated that Claimant told him that she did not get along with Fields and wanted to be removed from the job, but made no mention of being sexually harassed by Fields. He further stated that contrary to Claimant's testimony, he never witnessed Fields sexually harassing her and only witnessed Fields telling dirty

jokes. Plant Manager Young testified that he called the meeting on July 28, 1997, with Claimant and Fields because of the write-ups they received from Supervisor Dorsey on the previous day. He admitted that he did not give Claimant an opportunity to explain why she and Fields had argued the day before and did not want to hear the specifics of what had occurred. He stated that the topic of sexual harassment never came up during the meeting. Plant Manager Young further stated that he called an earlier meeting with Fields and Claimant in March or April of 1997 because of their conflicts, but that the topic of sexual harassment was not discussed.

Vice President Peterson testified that he was aware of the conflict between Claimant and Fields because he received copies of the incident reports. He stated that during his conversation with Claimant, she could not provide him with examples of Fields' sexual harassment. Vice President Peterson further stated that his investigation revealed no one who could corroborate Claimant's charges of sexual harassment or any other form of harassment. He indicated that Claimant could have filed a grievance through her union representative[3] or with Employer's industrial relations department, and even though Claimant stated that she did file a report, Vice President Peterson found no evidence that she had taken either course of action.

As to Employer's policy on sexual harassment, Vice President Peterson testified that the policy was posted conspicuously all over the mill, including near the employee time clock at the entrance to the mill. Employer's sexual harassment policy provides:

[A]ny employee who feels aggrieved is strongly urged to contact the Industrial Relations Department prior to undertaking any further action. The Industrial Relations Department will promptly investigate any complaint and will respond to the aggrieved employee.

---

3. Employer argues that the procedures outlined for filing a union grievance should not be considered because they were provided "extra-record on appeal". Although the procedures were not adduced at the hearing, our review of the record demonstrates that the *entire* agreement between

Employer and the union was admitted into the record, without objection, as "Employer Exhibit 4". (Notes of Testimony (N.T.) at p. 36). Because the entire agreement was admitted into evidence, Employer's contention that they were provided extra-record is without merit.

Vice President Peterson further stated that Employer's contract with Claimant's union (Steel Workers' Local 8377) also contained a provision prohibiting sexual discrimination and outlined a grievance procedure available to an aggrieved party.

As to her claims of sexual harassment, Fields testified that he never told any dirty jokes in Claimant's presence, never touched her and positively did not sexually harass her. He stated that the conflict between himself and Claimant arose because she did not do her job, which affected the level of production for the scalper machine and made it appear as if he was not doing his job. Fields indicated that he complained to Plant Manager Young about Claimant and was advised to document her work habits in order to substantiate his complaints. Regarding the argument of July 27, 1997, Fields testified that Claimant cursed him when he recorded her taking a long break, which he reported to Supervisor Dorsey, complaining that he could not work with Claimant any longer. Regarding the shattering light fixture, Fields stated that he was nowhere near the area when the incident occurred. He indicated that the forklift operator, while moving the table, accidentally hit a cord and caused the fixture to break.

Employer also attempted to present the testimony of Don Dimitrizak (Dimitrizak), a material handler who operated the forklift, to testify that his operation of the forklift was purportedly responsible for the light fixture shattering above Claimant's head. However, the Referee honored Claimant's objection and refused to let Dimitrizak testify because he was not present at the beginning of the hearing and because Employer "didn't bring it up" until the middle of the proceedings.

The Referee granted benefits finding that Claimant had a necessitous and compelling reason to leave her employment on August 3, 1997. He found that although there was a dispute as to whether Fields had sexually harassed Claimant, Employer's witnesses contradicted Claimant's testimony generally and not in specific terms. The Referee found Claimant's testimony credible and Employer's testimony "actually corroborated [her] contention that her complaints [of sexual harassment] were essentially dismissed by her superiors, and she was basically discouraged from expressing them." Employer appealed to the Board,[4] which affirmed and the instant appeal followed.[5]

Employer contends that it was denied its right to a fair hearing because Dimitrizak was not allowed to testify that he was the one who caused the light fixture to shatter and not Fields.[6] Unlike the Referee, the Board found that only Claimant believed that Fields broke the light.[7] While it found that the

4. The Board issued an initial decision on January 23, 1998. The decision was vacated and the case reopened on February 11, 1998, pursuant to Employer's Request for Reconsideration because the Board issued its initial decision prior to ruling on Employer's request for remand to a Referee for a further evidentiary hearing. After Employer submitted its brief, the Board issued a second decision on March 19, 1998, denying Employer's request for a remand.

5. Our scope of review in an unemployment compensation case is limited to a determination of whether the findings of fact were supported by substantial evidence in the record, whether an error of law was committed or whether constitutional rights were violated. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Stanley Flagg & Co., Inc., v. Unemployment Compensation Board of Review*, 146 Pa.Cmwlth. 248, 605 A.2d 443 (1992), *petition for allowance of appeal denied*, 532 Pa. 648, 614 A.2d 1144 (1992).

6. Employer also contends that it was denied a fair hearing because the Referee refused to admit two incident reports under the business records exception to the hearsay rule into the record. It asserts that the Referee's refusal further caused the hearing to be fundamentally unfair. However, during the hearing, Employer admitted that the incident reports were being presented merely to corroborate an incident report that had been prepared by Supervisor Dorsey. When Employer asked whether the reports would be entered, the Referee responded that he refused to make each report an "actual piece of evidence" because both reports were already contained in the record file. (N.T. at p. 33). Although the incident reports were not admitted as individual pieces of evidence, they were a part of the record and therefore available for consideration by both the Referee and the Board. Consequently, we find Employer's contention without merit.

7. The Board found:

15. On August 3, 1997, a light fixture shattered directly over the claimant's head, showering her with glass.

Referee should have allowed Dimitrizak to testify because Employer was not aware of Claimant's allegation that Fields broke the light fixture as a form of retaliation until she testified at the hearing, the Board went on to find that Claimant quit her job "due to continuing sexual harassment over a period of several months." The Board then determined that the Referee's refusal to allow Dimitrizak to testify was "harmless error since the incident with the light fixture is not crucial to the [C]laimant's case" and that sexual harassment was the reason Claimant quit her employment, not the light incident.

■ Whether the failure to allow Dimitrizak to testify is harmless error is determined by whether his testimony, i.e., that he was the one who caused the light fixture to shatter, would have been material to the outcome of the case. *See Beach v. Burns International Security Services*, 406 Pa.Super. 160, 593 A.2d 1285 (1991) ("material fact in one which affects the outcome of the case"); *Colonial Taxi Co. v. Unemployment Compensation Board of Review*, 84 Pa.Cmwlth. 430, 479 A.2d 96 (1984) (failure to reopen record to submit form as evidence to contradict claimant's testimony would not have materially affected outcome of case because form and other evidence demonstrate claimant's willingness to work). Whether Dimitrizak's testimony is material, though, is largely determined by another of Employer's contentions—that the Board erred by not confining its inquiry to the immediate cause for Claimant's quitting her job, the shattering of the light fixture, and going on to consider claims of sexual harassment that were found to have occurred previously. Because Claimant testified that the shattering light fixture was the

final incident in a history of sexual harassment that caused her to quit her job, and had Fields not caused this incident to occur she would not have quit her job, Employer contends that Dimitrizak's testimony is material because, if believed, it would establish that Claimant did not have a necessitous and compelling reason to quit.

■ As Employer correctly posited, when an employee is terminated or quits, the "factual matrix at the time of separation governs" as to whether a claimant is entitled to benefits, and the relevant inquiry in determining the cause of a claimant's unemployment is confined to the surrounding circumstances existing at the time of the claimant's departure. *Warner Co. v. Unemployment Compensation Board of Review*, 396 Pa. 545, 551, 153 A.2d 906, 909 (1959); *see also Penflex, Inc. v. Bryson*, 506 Pa. 274, 485 A.2d 359 (1984); *Canonsburg General Hospital v. Unemployment Compensation Board of Review*, 156 Pa.Cmwlth. 533, 628 A.2d 503 (1993), *aff'd*, 540 Pa. 531, 658 A.2d 790 (1995). While the Board could take into consideration other incidents of harassment, unless the precipitating event gave Claimant a necessitous and compelling reason to quit, then benefits should be denied. Because Dimitrizak is the only "impartial" witness, and his testimony goes to whether Fields purposely caused the light to shatter on Claimant or, at best, whether she had a reasonable basis to think that Fields acted intentionally, his testimony is material as to whether Claimant had a necessitous or compelling reason to quit.[8]

Ordinarily, we would remand this case to the Board for the taking of Dimitrizak's testi-

---

16. The claimant was upset by this incident because she thought [Fields] deliberately broke the light.

17. The claimant advised the employer she was leaving. The [claimant] quit due to the constant sexual harassment by [Fields].

18. [Fields] alleges he did not break the light fixture; that it was broken accidentally by another employee.

8. There appears to be a conflict in our case law as to whether Claimant has to establish objectively that Fields purposely caused the glass to shatter, *Ayres v. Unemployment Compensation Board of Review*, 143 Pa.Cmwlth. 310, 598 A.2d

1083 (1991) (a reasonable but not proven belief that Employer's conduct was a breach of ethics is not a necessitous and compelling reason to quit) or have only a subjective belief, e.g., a good-faith belief that Fields purposely caused the glass to shatter. *PECO Energy Co. v. Unemployment Compensation Board of Review*, 682 A.2d 40 (Pa.Cmwlth.1996) (in context of corporate downsizing, relevant inquiry is whether surrounding circumstances at time employee quit indicate likelihood that employee's fears about job would actually occur). Because of the way we have decided this case, we need not attempt to resolve that apparent conflict.

mony and for the Board to make new findings, but we need not do so here based on Employer's final contention that Claimant did not make reasonable efforts to preserve the employment relationship, negating her claim of sexual harassment as a necessitous and compelling reason to quit her job.[9] It contends that Claimant did not make a reasonable effort to preserve her employment because she failed to utilize Employer's grievance procedures to report or notify Employer of Fields' sexual harassment.

Sexual harassment can be a necessitous and compelling reason under Section 402(b) of the Law [10] to quit employment if the claimant can show that she acted with common sense and prudence to alleviate the sexual harassment. *Peddicord v. Unemployment Compensation Board of Review*, 166 Pa.Cmwlth. 676, 647 A.2d 295 (1994); *Homan v. Unemployment Compensation Board of Review*, 107 Pa.Cmwlth. 172, 527 A.2d 1109 (1987). Although a claimant is not required to report each and every incident of sexual harassment to her employer, *Homan, supra*, she must inform her employer of the situation. *Peddicord, supra; D'Andrea Wine & Liquor Imports v. Unemployment Compensation Board of Review*, 161 Pa. Cmwlth. 149, 636 A.2d 279 (1993). Where a mechanism exists, however, to deal with problems of sexual harassment, a claimant must make a good faith effort to utilize that mechanism to resolve her problems. *St. Barnabas, Inc. v. Unemployment Compensation Board of Review*, 106 Pa.Cmwlth. 191, 525 A.2d 885 (1987).

In *St. Barnabas, Inc.*, the Board granted unemployment compensation benefits finding that the claimant in that case had a necessitous and compelling reason to leave her employment because she had been sexually harassed and subjected to humiliating treatment. While acknowledging that the claimant could not report her problem to her supervisor because he was the harasser, we reversed finding that claimant should have reported her problems to her employer, i.e., the president, before submitting her resignation without giving her employer the opportunity to resolve the problems. With respect to the manner in which claimant could have reported her problems, we stated:

> It is true that a claimant need not indefinitely subject herself to unjust accusations and abusive conduct. But, in a case such as this one at bar, where a mechanism is in place to deal with such problems and is known to Claimant, Claimant must make a good faith effort to employ that mechanism in an effort to solve her problems.

525 A.2d at 888.

While in *St. Barnabas, Inc.* the claimant admitted that she had actual knowledge of employer's problem solving mechanism, Claimant here testified that she was unaware of Employer's sexual harassment policy. However, the uncontroverted evidence was that Employer's policy was posted all over the mill, including near the employee time clock. Even though she may not have had actual notice of it, Claimant is charged with constructive knowledge of the policy because it could have been discovered through due diligence due to its conspicuous location.[11] *See, e.g., Libbey–Owens–Ford Co.*

---

**9.** Employer also challenges the credibility of Claimant's testimony to the extent that she testified that she told her supervisors about Fields' sexual overtures. However, the Board is the ultimate fact finder and questions of credibility and evidentiary weight given to conflicting testimony found to be credible are matters for the Board and not for this Court. *Stringent v. Unemployment Compensation Board of Review*, 703 A.2d 1084 (Pa.Cmwlth.1997). Facts as found by the Board are conclusive upon review by this Court, provided that there is substantial evidence in the record to support those facts. *AVCO v. Unemployment Compensation Board of Review*, 105 Pa.Cmwlth. 316, 524 A.2d 531 (1987).

**10.** A "necessitous and compelling reason" to leave one's employment can "result[ ] from cir-

cumstances which produce pressure to terminate employment that is both real and substantial, and which would compel a reasonable person under the circumstances to act in the same manner." *Taylor v. Unemployment Compensation Board of Review*, 474 Pa. 351, 358–59, 378 A.2d 829, 832–33 (1977).

**11.** "Constructive notice is information or knowledge of a fact imputed by law to a person (although he may not actually have it), because he could have discovered the fact by proper diligence, and his situation was such as to cast upon him the duty of inquiring into it." BLACK'S LAW DICTIONARY 1062 (6th ed.1990).

*v. Unemployment Compensation Board of Review,* 42 Pa.Cmwlth. 430, 400 A.2d 1353 (1979) (notice of shutdown prominently displayed charges employees with constructive notice of its contents); *Clark v. Resistoflex Co.,* 854 F.2d 762 (5th Cir.1988) (employee's visit to home office cafeteria 40 times over ten-year period provided him with opportunity to see posted notices so that he should have known of their contents as a matter of law); *Charlier v. S.C. Johnson & Son, Inc.,* 556 F.2d 761 (5th Cir.1977) (when employer discharges duty by posting notice of statutory rights, employee is deemed to have constructive notice of those rights); *Gessner v. Runyon,* 1997 WL 666294 (E.D.Pa.) (EEOC notices posted at work facility charges plaintiff with constructive notice of administrative deadlines to militate tolling statute of limitations); *Brudne v. Amalgamated Trust & Savings Bank,* 627 F.Supp. 458 (N.D.Ill.1986) (claimant's failure to see posted ADEA notices insufficient to toll filing deadline on grounds that notices were not posted); *Malinowski v. State Farm Mutual Automobile Insurance Co.,* 1978 WL 188 (W.D.Pa.) (ADEA posters at regional office is constructive notice for employee who regularly worked and reported to location and will not toll deadline for filing claim); *Williams v. APS, Inc.,* 969 S.W.2d 433 (Tex.App.1997) (employee knew or should have known of employer's workers' compensation policy because policy posted at employer's place of business); *Davis v. Roadway Express, Inc.,* 777 S.W.2d 668 (Mo.Ct.App.1989) (notice of seatbelt requirement posted in drivers' room where it could be readily viewed by truck drivers normally expected to be there is constructive notice). Although the Board found that she told both Supervisor Dorsey and General Supervisor Svegel about Fields' sexual harassment, Claimant did not report it to Employer's industrial relations department until after she quit her job, precluding Employer's ability to resolve the problem. Because Claimant did not utilize the prescribed method to report the purported sexual harassment, even though the Board found that she notified her supervisors, under *St. Barnabas,* we are constrained to hold that her actions were not sufficient and she is not entitled to benefits.

Accordingly, the order of the Board is reversed.

### ORDER

AND NOW, this 2nd day of October, 1998, the order of the Unemployment Compensation Board of Review dated March 19, 1998, is reversed.