# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Cynthia Thomas, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 555 C.D. 2019 |
| | : | Submitted: February 10, 2020 |
| Unemployment Compensation | : | |
| Board of Review, | : | |
| Respondent | : | |

BEFORE:  HONORABLE RENÉE COHN JUBELIRER, Judge
         HONORABLE P. KEVIN BROBSON, Judge
         HONORABLE J. ANDREW CROMPTON, Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**                 **FILED:  April 27, 2020**

Petitioner Cynthia Thomas (Claimant) petitions for review of an order of the Unemployment Compensation Board of Review (Board).  The Board reversed a decision of the Unemployment Compensation Referee (Referee), thereby denying Claimant unemployment compensation benefits pursuant to Section 402(b) of the Unemployment Compensation Law (Law),[1] relating to voluntary separation without cause of a necessitous and compelling nature.  For the reasons set forth below, we affirm.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b).

Claimant applied for unemployment compensation benefits on November 18, 2018, after separating from her position as a secretary at Donna Gallo's Hearing Aid Health Center (Employer). (Certified Record (C.R.), Item No. 1 at 1-2.) The Erie UC Service Center (Service Center) determined that Claimant was ineligible for unemployment compensation benefits for the waiting week ending on November 24, 2018. (C.R., Item No. 4 at 1.) Claimant appealed the Service Center's determination, and a Referee conducted a hearing. (C.R., Item Nos. 5, 9.)

At the hearing, Claimant testified that she first worked as a secretary for Employer on May 14, 2018. (C.R., Item No. 9 at 4.) Claimant did not have a training or probationary period for the position, as she had worked as a medical secretary since 1981. (*Id.* at 5.) Claimant's job responsibilities included pulling charts, putting charts together for patient appointments, answering the phone, scheduling appointments, filing charts, sending hearing aids to be repaired, receiving and documenting incoming hearing aids, calling patients to verify their appointments, and cleaning the office after the work day had ended. (*Id.*) Claimant testified that Donna Gallo Robison (Employer's Owner) would interrupt and correct her while she spoke with patients on the phone and admonish her in front of patients by saying that she "must have nothing between her brains," "can't do this job," was "not qualified to do this job," and, among other things, has "never been a secretary." (*Id.* at 7-8.) Over the course of Claimant's employment with Employer, Employer's Owner repeatedly corrected Claimant about the way that Claimant attempted to complete her job responsibilities. (*Id.* at 7-10, 25.)

Claimant testified that Employer's Owner said that she wanted to discharge Claimant on at least three separate occasions prior to her last day of employment, but after each time she kept Claimant on and asked her to stay. (*Id.* at 8-9.)

2

Employer's Owner gave Claimant a report assignment with the client list that needed to be completed by the Monday following November 16, 2018. (*Id.* at 9.) Employer's Owner told Claimant that if the report assignment was not completed by the deadline, Employer's Owner would have to discharge her. (*Id.* at 9-10.) Employer's Owner also notified Claimant that she would not be paid for her time she spent working on the report assignment over the weekend following November 16, 2018, because she had already been paid to complete the report assignment. (*Id.* at 9-10.) Claimant knew that she was not going to complete the report assignment by the due date, and she testified, "I knew I was going to be fired on Monday, so I just left." (*Id.* at 10.) When asked if she gave Employer's Owner notice that she would not be returning to work, Claimant responded, "I left a note on her desk with a key—with the key taped to the note that I wasn't coming back." (*Id.*) Claimant stated that her position with Employer affected her emotionally, and Employer's Owner's degrading comments had a negative impact on her self-esteem. (*Id.* at 11.)

Employer's Owner testified on behalf of Employer. At the outset, she disputed Claimant's start date of employment. (*Id.* at 12-13.) Employer's Owner testified that after Claimant first interviewed for the position on May 20, 2018, she agreed to allow Claimant to come into the office for a probationary period to see if she liked the job and to learn the responsibilities of the position. (*Id.*) Employer's Owner officially hired Claimant on July 2, 2018. (*Id.* at 19.) Employer's Owner stressed that she paid Claimant $10 per hour for training during this period (May 20, 2018, until July 2, 2018) but had not yet hired her. (*Id.* at 13.) Employer's Owner testified that she did not think that Claimant would work out in the secretary position because Claimant failed to pay attention to her instructions. (*Id.*) After

3

privately confronting Claimant about her job performance, Claimant became emotional and shared that her forgetfulness originated from her medication that caused her to be forgetful and sleepy. (*Id.*) After this conversation, Claimant's job performance slightly improved. (*Id.*) Over the next few months, problems arose with Claimant's job performance for a variety of personal reasons that caused Employer's Owner to want to discharge Claimant; after conversing with Claimant each time, however, she did not discharge Claimant because she "didn't have the heart to leave her go." (*Id.* at 21.) Problems with Claimant's job performance included Claimant not being able to operate Employer's third-party billing system, forgetting how to do things, trouble concentrating on work, trouble communicating with patients, and trouble scheduling patients on the typical six-month schedule. (*Id.* at 20-22.)

In August 2018, following Employer's Owner's receipt of a partnership offer from another practitioner, she assigned Claimant the task of generating reports regarding Employer's active clients. (*Id.* at 15-16, 21, 22.) Claimant failed to complete the report assignment for several weeks, claiming she "did not have the time." (*Id.* at 16.) Employer's Owner, however, indicated that Claimant had every Wednesday to work on the report assignment without interruption or distraction. (*Id.* at 22.) Employer's Owner would check Claimant's progress on the report assignment on Tuesday afternoons and then again on Thursday mornings and would find that Claimant had not made any additional progress on the report assignment. (*Id.*) Employer's Owner informed Claimant that she was to complete the report assignment while Employer's Owner was on vacation in November of 2018, so that Claimant would not have any interruptions or distractions. (*Id.* at 16.) On the last day of Employer's Owner's vacation, she called Claimant to inquire about the

completed status of the report assignment. (*Id.*) At that time, Claimant informed her that she had lost the report. (*Id.*) Claimant, however, had not lost the report; rather, she failed to complete the report assignment. (*Id.*) Employer's Owner stated that she had to have the report for the pending offer with the doctor, and that it would be necessary for Claimant to work through the weekend to finish the report assignment, to which Claimant agreed. (*Id.*) Employer's Owner notified Claimant that Employer would not pay her for her work over the weekend because Employer had already paid her to complete the report assignment. Employer's Owner reasoned that she had assigned the task to Claimant in August and Claimant had a whole week's worth of time without interruptions or distractions to complete the assignment. (*Id.*) Employer's Owner did not know that Claimant was not going to come back to work the Monday following their conversation, because Claimant responded, "I guess I'll have to work the weekend then." (*Id.*)

Following the hearing, the Referee issued a decision, concluding that Claimant was not ineligible for unemployment compensation benefits under Section 402(b) of the Law, thereby reversing the Service Center's determination. (C.R., Item No. 10.) Employer appealed to the Board. (C.R., Item No. 11.) The Board reversed the Referee's decision, concluding that Claimant was ineligible for benefits because she voluntarily quit her position by leaving her key and a note saying that she would not be returning to work without first giving her Employer notice of her difficulty in completing her assignment by Employer's due date. (C.R., Item No. 12 at 2.) In so doing, the Board made the following findings of fact:

1. The claimant was last employed as a secretary by Donna Gallo's Hearing [Aid] Health Center from May 14, 2018, to November 16, 2018, at a final rate of $12 per hour.

5

2. The claimant had work performance issues throughout her tenure of employment that were a source of conflict between her and the employer's owner.

3. The employer's owner wanted to discharge the claimant, but never did so because she did not want the claimant to be unemployed.

4. On November 16, 2018, the employer's owner told the claimant that she must complete an assignment involving client appointments by the end of the day.

5. The employer's owner told the claimant that she would discharge the claimant if she did not have the assignment completed.

6. The claimant was unable to complete the assignment by 6 p.m. on November 16, 2018, and became worried that the employer's owner would discharge her.

7. The claimant became frustrated and left her key and a note that she would not be returning to work.

8. The claimant voluntarily quit her job without speaking with the employer's owner.

(*Id.* at 1-2.) The Board reasoned:

> At the hearing, the claimant testified that the employer's owner admonished her in front of clients and criticized her for work performance issues. The claimant further testified that on November 16, 2018, the employer's owner told her that she must complete an assignment involving client appointments by the end of the day. When the claimant was unable to complete the assignment by 6 p.m., she became frustrated and left her key and a note for the employer stating that she was quitting her job. The claimant never returned to work.
>
> The Board determines that the claimant had difficulty with her job duties throughout her employment and that this was a source of constant conflict between her and the employer's owner. The Board determines that

6

while there were several incidents in which the owner admonished the claimant publicly, the proximate cause of the claimant's decision to quit was her inability to meet a deadline on November 16, 2018. The claimant did not apprise the owner of her difficulty meeting the deadline before she quit. Rather, she left her keys and a note stating that she would not be returning to work. Accordingly, because the employer's owner was unaware of the issue driving the claimant's decision to quit, the claimant did not satisfy her burden under Section 402(b) of the Law.

(*Id.* at 2.) Claimant petitioned the Board for reconsideration of its decision, which the Board denied. (C.R., Item Nos. 13, 15.) Claimant then petitioned this Court for review.

On appeal to this Court,[2] Claimant argues: (1) the Board erred by capriciously disregarding competent evidence in its determination that Claimant did not have a necessitous and compelling reason to quit; (2) the Board erred by capriciously disregarding evidence that Employer required Claimant to work without pay; (3) substantial evidence does not exist to support the Board's finding that Employer did not know the reasons behind Claimant's decision to quit; and (4) the Board erred in concluding that Claimant voluntarily quit without cause of a necessitous and compelling nature because she failed to communicate her concerns regarding the job with Employer. Claimant does *not* argue that Employer terminated her employment.

First, we will address Claimant's arguments pertaining to whether the Board capriciously disregarded competent evidence. In determining whether the Board capriciously disregarded evidence in making its determination, this "Court must decide if the Board deliberately disregarded competent evidence that a person of

---

[2] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. 2 Pa. C.S. § 704.

7

ordinary intelligence could not conceivably have avoided in reaching a particular result, or stated another way, if the Board willfully or deliberately ignored evidence that any reasonable person would have considered to be important." *Jackson v. Unemployment Comp. Bd. of Review*, 933 A.2d 155, 156 n.4 (Pa. Cmwlth. 2007). A "capricious disregard of evidence" has been characterized as "a deliberate and baseless disregard of apparently reliable evidence." *Taliaferro v. Darby Twp. Zoning Hearing Bd.*, 873 A.2d 807, 814 (Pa. Cmwlth.), *appeal denied*, 887 A.2d 1243 (Pa. 2005).

It is well-settled that the Board, in an unemployment compensation case, is the ultimate fact finder and is, therefore, entitled to make its own determinations as to witness credibility and evidentiary weight. *Peak v. Unemployment Comp. Bd. of Review*, 501 A.2d 1383, 1388 (Pa. 1985). The Board is also empowered to resolve conflicts in the evidence. *DeRiggi v. Unemployment Comp. Bd. of Review*, 856 A.2d 253, 255 (Pa. Cmwlth. 2004). "Questions of credibility and the resolution of evidentiary conflicts are within the sound discretion of the Board[] and are not subject to re-evaluation on judicial review." *Miller v. Unemployment Comp. Bd. of Review*, 405 A.2d 1034, 1036 (Pa. Cmwlth. 1979). Furthermore, "[w]hen there is a conflict between the parties on any issue, it is for the Board to resolve the dispute and any finding on that issue, if supported by evidence, is conclusive." *Phila. Coke Div., E. Assoc. Coal Corp. v. Unemployment Comp. Bd. of Review*, 293 A.2d 129, 132 (Pa. Cmwlth. 1972). The Board is not required to accept even uncontroverted testimony as true in making its determinations. *Edelman v. Unemployment Comp. Bd. of Review*, 310 A.2d 707, 708 (Pa. Cmwlth. 1973).

Claimant first contends that the Board capriciously disregarded competent evidence in determining that Claimant did not have a compelling reason to quit her

employment. Claimant argues that the Board ignored essential testimony she had given before the Referee that allegedly illustrates that Employer's Owner created an intolerable work atmosphere by repeatedly and publicly admonishing Claimant— which would serve as Claimant's necessitous and compelling reason to quit her position. We disagree. The Board, in making its determination, did consider the offered testimony regarding Employer's work atmosphere and the impact that it may have had on Claimant's decision to voluntarily quit her position. In its decision, the Board acknowledged both the constant conflict between Employer's Owner and Claimant that arose from Claimant's inability to satisfactorily complete her job responsibilities over the course of her employment and the evidence of several incidents in which Employer's Owner publicly admonished Claimant. (C.R., Item No. 12 at 2.) Regardless of this evidence within the record, the Board determined that the "proximate cause" of Claimant's decision to quit was due to her "inability to meet a deadline on November 16, 2018"—not due to an intolerable work atmosphere. (*Id.*)

In sum, the Board's inclusion of this reasoning and display of other testimony within its determination illustrates that the Board did consider the evidence presented by Claimant on appeal when reaching its determination. Additionally, in Claimant's brief to this Court, Claimant submits that she quit her position after becoming aware that Employer's Owner would be discharging her the following Monday due to her inability to complete the report assignment. (Claimant's Br. at 16.) As the Board has the authority to resolve conflicts in record evidence, it did not capriciously disregard evidence that a reasonable person would have considered to be important in determining whether Claimant had a necessitous and compelling reason to quit.

9

Claimant additionally argues that the Board erred in capriciously disregarding evidence that Employer required Claimant to work without compensation. Essentially, Claimant alleges that the Board disregarded evidence that Employer's Owner made her routinely work without compensation—in cleaning the office after hours and in threatening not to pay Claimant for the weekend time she would have had to work in order to finish the report assignment by the due date. We disagree. As discussed above, the Board found that the "proximate cause" of Claimant's departure from employment was due to her inability to complete the report assignment by the deadline—not because Employer was not paying her. The Board did not capriciously disregard this evidence; rather, it determined that Claimant was motivated to quit her position due to another reason.

Claimant next argues that substantial evidence does not exist to support the Board's finding that Employer did not know the reasons for her decision to voluntarily quit her position. Generally, substantial evidence is defined as relevant evidence upon which a reasonable mind could base a conclusion. *Johnson v. Unemployment Comp. Bd. of Review*, 502 A.2d 738, 740 (Pa. Cmwlth. 1986). In determining whether there is substantial evidence to support the Board's findings, this Court must examine the testimony in the light most favorable to the prevailing party, giving that party the benefit of any inferences that can logically and reasonably be drawn from the evidence. *Id.* A determination as to whether substantial evidence exists to support a finding of fact can only be made upon examination of the record as a whole. *Taylor v. Unemployment Comp. Bd. of Review*, 378 A.2d 829, 831 (Pa. 1977). The Board's findings of fact are conclusive on appeal only so long as the record, taken as a whole, contains substantial evidence to support them. *Penflex, Inc. v. Bryson*, 485 A.2d 359, 365 (Pa. 1984). Additionally, "[t]he fact that . . .

[a party] might view the testimony differently than the Board[] is not grounds for reversal if substantial evidence supports the Board's findings." *Tapco, Inc. v. Unemployment Comp. Bd. of Review*, 650 A.2d 1106, 1108-09 (Pa. Cmwlth. 1994). The Board is not required to include, within its findings, findings that address all of the allegations raised by the parties; rather, the Board is only required to include those findings that are necessary to resolve the relevant issues to the evidence and its decision. *Calloway v. Unemployment Comp. Bd. of Review*, 414 A.2d 181, 183 n.3 (Pa. Cmwlth. 1980); *Unemployment Comp. Bd. of Review v. Walton*, 343 A.2d 70, 72 (Pa. Cmwlth. 1975).

Claimant essentially argues that the record evidence illustrates that Employer knew her reasons for quitting because she had spoken with Employer's Owner numerous times about the inappropriateness of the public admonishment she received from Employer's Owner. Additionally, Claimant argues that Employer's Owner knew of her reasons to quit from their telephone conversation on November 16, 2018, in which they discussed the report assignment and that Claimant would be discharged if she did not complete the assignment by the following Monday.

As evidenced from its written determination, the Board considered the testimony from both parties regarding Employer's work atmosphere, the events surrounding the report assignment, and the last day of Claimant's employment when it determined that Claimant did not communicate her concerns about her position with Employer before quitting. (C.R., Item No. 12 at 1-2.)

The Board acknowledged that evidence showed that Employer's Owner repeatedly and publicly admonished Claimant. (*Id.* at 2.) As discussed above, however, the Board did not find this reason to be the "proximate cause of the

11

[C]laimant's decision to quit." (*Id.*) Rather, the Board concluded that Claimant's inability to meet Employer's Owner's deadline for the report assignment was the "proximate cause" of Claimant's decision to quit her position. (*Id.*) The record indicates conflicting testimony between Claimant and Employer as to whether Claimant had informed Employer about her reasons for quitting. Claimant testified that she notified Employer that she would not be returning to work by leaving on her desk a key with a note stating that she would not be coming back to work. (C.R., Item No. 9 at 10.) Employer's Owner, however, testified that during her conversation with Claimant on November 16, 2018, Claimant indicated that she would work through the weekend in order to complete the report assignment as indicated by Claimant's alleged statement, "I guess I'll have to work the weekend." (*Id.* at 16.) Additionally, Employer's Owner called into the office the following Monday morning expecting Claimant to be there to answer her call and was surprised when Claimant was not. (*Id.*)

In its determination, the Board found that Claimant never communicated her inability to complete the report assignment by the due date and merely left a note and key on Employer's Owner's desk announcing her departure. (C.R., Item No. 12 at 2.) As this finding is supported by testimony given by Employer's Owner within the record, it is binding on appeal. Despite the conflicting testimony within the record, the Board has the authority to resolve such evidentiary conflicts, and, so long as its determination is supported by evidence within the record, the Board's finding is binding on appeal. *Peak*, 501 A.2d at 1388.

We next consider whether the Board erred in concluding that Claimant voluntarily quit without cause of a necessitous and compelling nature because she failed to communicate her reasons to quit with Employer. Under Section 402(b) of

12

the Law, a claimant who voluntarily quits her employment is ineligible for unemployment compensation benefits unless she establishes a necessitous and compelling reason for voluntarily quitting her position. Determining whether a claimant had a necessitous and compelling reason to voluntarily quit is a question of law that is reviewable by this Court. *Wasko v. Unemployment Comp. Bd. of Review*, 488 A.2d 388, 389 (Pa. Cmwlth. 1985). A claimant bears the burden to prove that she had a necessitous and compelling reason to voluntarily quit her position with her employer. *Fitzgerald v. Unemployment Comp. Bd. of Review*, 714 A.2d 1126, 1129 (Pa. Cmwlth. 1998), *appeal denied*, 794 A.2d 364 (Pa. 1999). In order to establish that one has a necessitous and compelling reason to voluntarily quit, a claimant must demonstrate: (1) circumstances existed that produced real and substantial pressure to terminate her employment; (2) like circumstances would compel a reasonable person to act in the same manner; (3) the claimant acted with ordinary common sense; and (4) the claimant made a reasonable effort to preserve employment. *Procito v. Unemployment Comp. Bd. of Review*, 945 A.2d 261, 264 (Pa. Cmwlth. 2008) (en banc).

Furthermore, where a claimant fails to make a reasonable attempt to reconcile her dissatisfaction with her working conditions with her employer, unemployment compensation benefits must be denied. *Craighead-Jenkins v. Unemployment Comp. Bd. of Review*, 796 A.2d 1031, 1033 (Pa. Cmwlth. 2002); *Petrick v. Unemployment Comp. Bd. of Review*, 455 A.2d 757, 758-59 (Pa. Cmwlth. 1983). It is well-settled that "when an employee . . . quits, the 'factual matrix at the time of separation governs' as to whether a claimant is entitled to [unemployment compensation] benefits." *Hussey Copper, Ltd. v. Unemployment Comp. Bd. of Review*, 718 A.2d 894, 899 (Pa. Cmwlth. 1998). In order to determine the particular cause of a

13

claimant's unemployment, the Court must look to the "surrounding circumstances existing at the time of the claimant's departure." *Id.* The Board is the ultimate finder of fact, and such findings, if supported by substantial evidence within the record, are binding on appeal. *Peak*, 501 A.2d at 1388; *Penflex,* 485 A.2d at 365.

It is evident that the Board found that Employer's Owner gave Claimant a deadline for the report assignment, and Claimant feared that she would not be able to complete the assignment by the deadline. (C.R., Item No. 12 at 1-2.) As the testimony before the Referee indicates that Employer's Owner agreed to allow Claimant to continue to work on the report assignment over the weekend, Claimant's fear that she would not be able to complete the report assignment by Employer's Owner's set deadline is unwarranted. In addition, as discussed above, in order to establish necessitous and compelling reasons to voluntarily quit employment, a claimant must take reasonable steps to preserve her employment, including making attempts to reconcile her dissatisfaction. Claimant appeared to agree to complete the assignment over the weekend, if necessary, and then changed her mind without further discussing it with Employer. Had she informed Employer of her position and Employer fired her, then we would be in a different position. The Board, therefore, did not err in concluding that Claimant voluntarily quit without cause of a necessitous and compelling nature because she failed to communicate her concerns to Employer.

Accordingly, we affirm the order of the Board.

P. KEVIN BROBSON, Judge

14

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Cynthia Thomas, :
                Petitioner :
                 :
        v. : No. 555 C.D. 2019
                 :
Unemployment Compensation :
Board of Review, :
                Respondent :

## O R D E R

AND NOW, this 27th day of April, 2020, the order of the Unemployment Compensation Board of Review is AFFIRMED.

 

                                    
P. KEVIN BROBSON, Judge