# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Roger S. Smith, : 
                    Petitioner : 
                                  : 
            v.                    :   No. 1084 C.D. 2020
                                  :   Submitted: April 9, 2021
Unemployment Compensation         : 
Board of Review,                  : 
                    Respondent    : 

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge

<u>**OPINION NOT REPORTED**</u>

**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**                    **FILED:  August 23, 2021**

Roger S. Smith (Claimant), pro se, petitions for review of an Order of the Unemployment Compensation (UC) Board of Review (Board) that found Claimant ineligible for UC benefits pursuant to Section 402(b) of the Unemployment Compensation Law[1] (Law) because Claimant did not have a necessitous and compelling reason for voluntarily leaving work.  Because the Board, as fact finder, was within its province to find that Claimant did not present credible evidence to support that Claimant had a necessitous and compelling reason for leaving work, and because the Board did not capriciously disregard Claimant's evidence or arguments, we affirm the Board's Order.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b).

## I. FACTUAL BACKGROUND AND PROCEDURE

Claimant was employed by Autozoners, LLC – Auto Zone (Employer) as a full-time parts sales manager from October 15, 2019, until March 28, 2020. (Certified Record (C.R.) at 17.) On March 28, 2020, Claimant began an Employer-approved unpaid leave of absence due to "personal reasons" and applied for benefits on April 12, 2020. (*Id*.) The Erie UC Service Center (Service Center) found Claimant ineligible for benefits pursuant to Section 402(b), and Claimant timely filed an appeal.[2]

### A. *Proceedings before the Referee*

In Claimant's first appeal filed on May 8, 2020, Claimant stated: "On [March 28, 2020,] I stepped out of work (customer facing retail) out of [f]ear of contracting COVID-19 and because of my age, I confirmed with my manager . . . that I was NOT resigning." (*Id.* at 24-26.) Further, the appeal stated that Claimant confirmed with Employer's human resources personnel that Claimant was not resigning, that Employer suggested Claimant apply for 12 weeks of personal leave that Employer offers, and lastly that Claimant did not quit the job. (*Id.*) Two days later, on May 10, 2020, Claimant sent an email to UC authorities, which Claimant called a "revised appeal," offering a different reason for taking a leave of absence. (*Id.* at 28.) In the email, Claimant stated, in essence, that after reviewing the UC website, Claimant realized that the medical conditions of Claimant's feet and ankles (medical conditions) may have constituted a necessitous and compelling reason for leaving work. (*Id.*) Further, Claimant stated that when interviewing for the position, two managers told Claimant that they would accommodate the medical conditions,

---

[2] The Service Center assessed a nonfault overpayment, which the Referee and the Board upheld. (C.R. at 21.)

which never occurred. (*Id.*) Claimant would have filed on this basis first, Claimant explained in the email, had Claimant known the requirements of Section 402(b). (*Id.*)

Subsequently, a telephone hearing was held before a Referee, at which Claimant appeared pro se and a representative for Employer attended. (*Id.* at 34, 113.) At the start of the hearing when the Referee asked why Claimant had requested the leave of absence, Claimant responded by stating, "I requested that **because of the pandemic**. Basically . . . the pandemic had been in full bloom by that point and I was growing increasingly concerned because my job entailed . . . pretty regular customer [contact] . . . on the retail sales floor." (*Id.* at 120 (emphasis added).) Further, Claimant stated "[a]nd even though we were taking some basic precautions, still I was in pretty constant customer contact. And then . . . one of our co-workers['] . . . wi[v]e[s] had been tested . . . for COVID-19." (*Id.*) Claimant feared contracting COVID-19 if employment continued with Employer. (*Id.*) Based on the Centers for Disease Control and Prevention's guidelines placing those 65 years old and older in "the high-risk group," Claimant testified to additional pressure Claimant felt to take a leave of absence. (*Id.*) Claimant also testified about a history of "bronchial pneumonia." (*Id.*) For these reasons, Claimant informed the store manager that Claimant was not willing to go back to work, which the store manager supported, telling Claimant "the company would support [Claimant's] decision."[3] (*Id.*)

Claimant further testified that "even though [Claimant's] direct occasion for stepping out of work on [March 28, 2020,] was to do with the pandemic, there had been [an] . . . ongoing issue . . . regarding [Claimant's] feet." (*Id.*) When Claimant

---

[3] Employer testified that Claimant, still employed by Employer at the time of the hearing, requested and was granted an unpaid personal leave of absence due to the pandemic. (*Id.* at 118-19.)

3

began discussing the medical conditions, the Referee interrupted to remind Claimant that Claimant's initial reason for taking a leave of absence was the emergence of COVID-19 and a co-worker's wife being tested for COVID-19. (*Id.* at 121.) Claimant responded by explaining that after receiving the initial notice that the Service Center found Claimant ineligible for benefits, Claimant visited the UC website, where Claimant learned that the ongoing medical conditions **could have been** a qualifying reason for taking the leave of absence under Section 402(b). (*Id*.) The Referee stated, "[t]he reason you separated on March 28[, 2020, was] that you were concerned about a [co-worker's] wife being tested for COVID[-19]. So, you did[ no]t quit your job because of your feet; you quit because of COVID[-19]." (*Id.*) Further, the Referee explained that "you do[ no]t just throw up . . . whatever [reason] you think . . . might fit. . . . It's what caused you to quit on March 28[, 2020,] or to leave." (*Id.*) The Referee explained:

> [I]f you are going to say you quit because of your feet, rather than the pandemic, then I[ a]m going to want to know what you did to have to notify [] Employer of that specific condition; whether you gave them [sic] an opportunity to alleviate the position or give you an accommodation that would allow you to continue working.

(*Id.*) Claimant spent the remainder of the hearing explaining how Claimant's ongoing medical conditions were not accommodated by Employer and how the medical conditions were exacerbated by Claimant's employment, to which Employer offered opposing testimony.

### B. Referee's Decision

Following the hearing, the Referee issued a decision denying Claimant benefits pursuant to Section 402(b) on the basis that Claimant's initial reason for taking a voluntary leave of absence, fear of COVID-19 infection at work, was not

satisfactory under the Law. (Referee's Decision at 3.) In doing so, the Referee made the following relevant findings of fact:

> 2. [] Claimant began an Employer-approved unpaid leave of absence for personal reasons on March 28, 2020.
>
> 3. [] Claimant applied for a personal leave of absence because a colleague's wife was being tested for COVID[-]19 and [Claimant] was wary of becoming infected with the virus while at work.

(*Id.*, Findings of Fact (FOF) ¶¶ 2-3.)

The Referee explained that "in this case[,] the question that must be resolved is why [Claimant] left [] work[,] i.e., was it due to a medical condition relating to foot and ankle pain or fear of COVID[-]19 infection at work." (*Id.* at 2.) The Referee concluded:

> In light of the . . . testimony that [Claimant] applied for the leave of absence because a colleague's wife was being tested for COVID[-]19 and . . . was wary of becoming infected with the virus while at work, . . . Claimant left work on March 28, 2020[,] because [Claimant] was wary of becoming infected with the virus, not because of . . . foot and ankle pain.

(*Id.* at 3.) As to the latter reason, the Referee stated that, even if Claimant had left work due to the medical conditions, Claimant still would not have been found eligible for benefits. (*Id.*) The Referee concluded that because Claimant failed to establish a necessitous and compelling reason for leaving work, Claimant was ineligible for benefits pursuant to Section 402(b). (*Id.*)

5

*C. Board's Order*

Claimant appealed to the Board, which affirmed. (Board's Order.) In doing so, the Board adopted and incorporated the Referee's findings of fact and conclusions of law, with one minor modification, which is not relevant to our disposition.[4] (*Id.*) The Board reasoned that after considering the entire record, the decision made by the Referee was proper under Section 402(b) and that "[a] general fear of contracting COVID[-19] is not a necessitous and compelling reason to quit employment legally open during the pandemic." (*Id.*) The Board further found that "[C]laimant ha[d] not proven a medical condition which place[d Claimant] at higher risk of contracting the virus or unsafe working conditions." (*Id.*) Claimant then filed a timely Petition for Review with this Court.

## II.    PARTIES' ARGUMENTS

On appeal,[5] Claimant argues that the Board capriciously disregarded relevant evidence concerning Claimant's medical conditions and that Claimant should be awarded benefits because Claimant presented a necessitous and compelling reason for taking a leave of absence based on Claimant's medical conditions. Claimant contends that the Referee did not outright dismiss Claimant's second appeal on this basis and that the Board's decision did not address that issue on appeal either, other

---

[4] The Board noted that the third paragraph on page three of the Referee's Decision should read: "At the hearing, [] [C]laimant provided no testimony or documentation that would support a finding that [Claimant] had been tested for or found to be infected with COVID[-]19." (Board's Order.) The Referee's Decision stated: "At the hearing, [] Claimant provided no testimony or documentation that would support a finding that [Claimant] had **not** been tested for or found to be infected with COVID[-]19." (Referee's Decision at 3 (emphasis added).)

[5] Our review is limited to determining "whether constitutional rights were violated, [whether] an error of law was committed[,] or whether necessary findings of fact are supported by substantial competent evidence." *Seton Co. v. Unemployment Comp. Bd. of Rev.*, 663 A.2d 296, 298 n.2 (Pa. Cmwlth. 1995).

than stating that the Board "consider[ed] the entire record in this matter." (Claimant's Brief (Br.) at 9 (quoting Board's Order).)

The Board responds that it did not capriciously disregard Claimant's evidence as to Claimant's medical conditions; rather, it discredited Claimant's testimony that these medical conditions were the reason that Claimant took a leave of absence in light of Claimant's initial appeal and testimony that Claimant took a leave of absence due to fear of contracting COVID-19. Moreover, the Board contends that Claimant waived any argument related to COVID-19 being a necessitous and compelling reason to leave work because it was not properly raised in Claimant's brief, and, alternatively, that Claimant failed to satisfy the burden of proving that a necessitous and compelling reason caused Claimant to take the leave of absence.

## III. DISCUSSION

Section 402(b) of the Law states that a claimant shall be ineligible for compensation for any week "[i]n which [the claimant's] unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature[.]" 43 P.S. § 802(b). "Whether a claimant had cause of a necessitous and compelling nature to quit a job is a conclusion of law subject to review by this Court." *Warwick v. Unemployment Comp. Bd. of Rev.*, 700 A.2d 594, 596 (Pa. Cmwlth. 1997).

> [A claimant's] burden [of establishing a necessitous or compelling reason for voluntarily terminating employment] may be met by showing that the circumstances **at the time of the decision** produced both a real and substantial pressure to leave the employment and that a reasonable person would have been similarly compelled under the same circumstances.

*Leason v. Unemployment Comp. Bd. of Rev.*, 198 A.3d 509, 512 (Pa. Cmwlth. 2018) (emphasis added).

7

Initially, we address what issue Claimant is pursuing in this appeal. Generally, "when a [c]laimant appeals an issue, but fails to address the issue in [the claimant's] brief, the issue is waived." *Tyler v. Unemployment Comp. Bd. of Rev.*, 591 A.2d 1164, 1167 (Pa. Cmwlth. 1991). Claimant concedes that "this **appeal does not pertain**" to the Board's COVID-19 reasoning because Claimant "misunderstood the COVID[-19]-related qualifications" for obtaining UC benefits and Claimant is "**willingly drop[ping]** that factor [from] the appeal altogether." (Claimant's Br. at 6, 9 (emphasis added).) Therefore, because Claimant has chosen, expressly, not to pursue the issue of whether the fear of contracting COVID-19 constitutes a necessitous and compelling reason to leave one's employment on appeal, we do not address it further.

Claimant does argue on appeal, however, that the Board capriciously disregarded evidence of the medical conditions that provided Claimant with the necessitous and compelling cause to stop working for Employer. We have explained that a capricious disregard of evidence "occurs where the fact finder willfully and deliberately disregards competent and relevant evidence that one of ordinary intelligence could not possibly have avoided in reaching a result." *Wise v. Unemployment Comp. Bd. of Rev.*, 111 A.3d 1256, 1262 (Pa. Cmwlth. 2015). More specifically, a capricious disregard of evidence occurs "where the fact[ ]finder has refused to resolve conflicts in the evidence, has not made essential credibility determinations[,] or has completely ignored overwhelming evidence without comment." *Id.* at 1263. It is the responsibility of the fact finder to resolve the conflicts in the testimony and explain why it has accepted, or rejected, each piece of relevant evidence. *Id.* The Pennsylvania Supreme Court has explained that review for capricious disregard of competent evidence is an "appropriate component of

8

appellate consideration in every case in which such question is properly brought before the court." *Leon E. Wintermyer, Inc. v. Workers' Comp. Appeal Bd. (Marlowe)*, 812 A.2d 478, 487 (Pa. 2002).

In unemployment compensation matters, the Board is the ultimate fact finder and is empowered to make credibility determinations. *Russo v. Unemployment Comp. Bd. of Rev.*, 13 A.3d 1000, 1003 (Pa. Cmwlth. 2010). In making such determinations, the Board is free to reject the testimony of any witness, even uncontradicted testimony. *Daniels v. Unemployment Comp. Bd. of Rev.*, 755 A.2d 729, 731 (Pa. Cmwlth. 2000). We have repeatedly stated that it is "irrelevant whether the record contains evidence to support findings other than those made by the fact[ ]finder; the critical inquiry is whether there is evidence to support the findings actually made." *Sipps v. Unemployment Comp. Bd. of Rev.*, 181 A.3d 479, 484 (Pa. Cmwlth. 2018); *see also Ductmate Indus., Inc. v. Unemployment Comp. Bd. of Rev.*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008) (holding same).

After review, we find no support for the argument that the Board "willfully and deliberately disregard[ed] competent and relevant evidence" or "refused to resolve conflicts in the evidence" regarding whether Claimant's medical conditions constituted a necessitous and compelling cause to leave his job. *Wise*, 111 A.3d at 1262-63.

Claimant gave two reasons for leaving work. The record reflects the Board considered both reasons proffered by Claimant and simply credited Claimant's first reason, which was based upon COVID-19-related concerns. This Court has previously stated that the question is not merely whether a necessitous and compelling reason existed but whether the claimant meets their burden of proving that a necessitous and compelling reason existed and **actually caused** the claimant

9

to voluntarily leave work. *See Brunswick Hotel & Conf. Ctr., LLC v. Unemployment Comp. Bd. of Rev.*, 906 A.2d 657, 660 (Pa. Cmwlth. 2006); *Baird v. Unemployment Comp. Bd. of Rev.*, 372 A.2d 1254, 1258 (Pa. Cmwlth. 1977). Stated another way, when a claimant is terminated or quits, the "'factual matrix **at the time of separation** governs' as to whether a claimant is entitled to benefits, and the relevant inquiry in determining the cause of a claimant's unemployment is confined to the surrounding circumstances existing **at the time of the claimant's departure**." *Hussey Copper Ltd. v. Unemployment Comp. Bd. of Rev.*, 718 A.2d 894, 899 (Pa. Cmwlth. 1998) (emphasis added).

Some comparison to *Baird* is helpful. In *Baird*, a claimant filed an application for UC benefits, and the claimant was found ineligible under Section 402(b). *Baird*, 372 A.2d at 1256. The claimant proffered two reasons for quitting: first, because the foreman constantly used offensive profanity; and second, because the claimant was assigned additional duties without increased pay. *Id.* The employer presented evidence, which contradicted the claimant's testimony. *Id.* The Board found the claimant ineligible for benefits under Section 402(b), holding that the claimant left work because the claimant was assigned additional duties without increased pay, which did not constitute a necessitous and compelling reason for voluntarily terminating employment. *Id.* On appeal to this Court, the claimant argued that the Board capriciously disregarded competent evidence in failing to make findings with respect to the first reason that the claimant provided for separating from employment: the foreman's constant use of profanity. *Id.* at 1257. We held that, on the issue of why the claimant quit, whether it was the assignment of additional duties without greater pay or the alleged profanity of the foreman, the Board simply believed the employer's evidence over the claimant's, which was the Board's

10

prerogative. *Id.* We further held that "[t]he Board's finding that [the claimant's] admitted voluntary quit was because [the] employer refused [the claimant] a requested increase in pay[,] as the employer's evidence tended to show, necessarily exclude[d] a finding that [the claimant] quit for the reasons [the claimant] assigned." *Id.*

Similar to *Baird*, Claimant here also offered two reasons for taking a leave of absence. The first reason, given at the time Claimant left, when Claimant filed the UC claim and when Claimant testified at the hearing, was fear of contracting COVID-19 during the pandemic. Later, after doing some research, Claimant provided a second reason based on Claimant's medical conditions. As in *Baird*, the Board credited the reason as to why Claimant left based on the "circumstances existing at the time of [Claimant's] departure," *Hussey Copper Ltd.*, 718 A.2d at 899, rather than those offered after-the-fact.

Claimant contends that the Board did not address the evidence regarding Claimant's medical conditions, other than stating that the Board "consider[ed] the entire record in this matter" and that this was a capricious disregard of evidence. (Claimant's Br. at 9 (quoting Board's Order).) Contrary to Claimant's contention, however, the Referee and Board did recognize that Claimant raised two reasons for taking a leave of absence. The Referee expressly addressed the medical conditions, but did not credit that this was the reason why Claimant left work on March 28, 2020. The Board adopted and incorporated the Referee's Decision, and, in doing so, simply chose to credit the reason Claimant gave at the time Claimant left work— fear of contracting COVID-19—as the actual cause of Claimant leaving, which was within its province as fact finder. *Russo*, 13 A.3d at 1003. "[F]indings need not

11

always address themselves to all of the allegations and defenses raised by a claimant." *Unemployment Comp. Bd. of Rev. v. Walton*, 343 A.2d 70, 72 (Pa. 1975).

Moreover, the Board did not ignore overwhelming evidence; rather, its determination is supported by evidence in the record. Claimant's initial appeal from the Service Center's Notice of Determination (Determination) stated Claimant left work based on fears stemming from the pandemic and a co-worker's wife being tested for COVID-19. Claimant does not dispute this; instead, Claimant simply argues that the Board should have accepted the second reason offered for taking a leave of absence, Claimant's medical conditions, in its place. However, the record reflects, and Claimant candidly admits, that only after Claimant reviewed the UC website after being found to be ineligible for benefits did Claimant realize that the medical conditions may have justified Claimant voluntarily leaving work. In the second appeal from the Determination, Claimant explains that, after visiting the UC website, Claimant learned that the medical conditions could have satisfied the Section 402(b) requirements and then questioned whether Claimant "[m]ay [] revise [the] claim on this basis, [as Claimant] **never knew this or [Claimant] would have filed so at first**." (C.R. at 27 (emphasis added).) In addition, at the hearing, Claimant was asked by the Referee why Claimant took the leave of absence, to which Claimant responded "because of the pandemic," only later asserting it was because of the medical conditions. (*Id.* at 120.) Finally, in Claimant's brief, Claimant states, "[i]n my research of the [Pennsylvania UC] website, I came across the section headed 'Voluntary [Q]uit[,]'[] where I was surprised to find qualifications for [UC] that seemed to match a **separate** physical and medical matter pertaining to my job." (Claimant's Br. at 6 (emphasis added).)

12

Claimant's statements at the time of leaving, during the filing of the claim, at the hearing, and before this Court all support the Board's determination that Claimant's medical conditions were not **the reason** Claimant took a leave of absence **at the time Claimant left** on March 28, 2020. *Hussey Copper Ltd.*, 718 A.2d at 899. Understandably, because Claimant believes the second reason offers a better chance of obtaining benefits, Claimant wished to substitute it for the initial reason given for leaving work. However, that the Board did not credit the second reason represents a proper exercise of the Board's credibility and fact-finding power and is, therefore, not a capricious disregard of evidence. *Wise*, 111 A.3d at 1262; *Russo*, 13 A.3d at 1003.

## IV. CONCLUSION

In summary, the Board found that Claimant left work out of fear of contracting COVID-19, as this was the reason given at the time Claimant left work, on the initial application for UC benefits, and at the hearing before the Referee. The Board did not credit Claimant's later-proffered reason based on Employer's alleged failure to accommodate Claimant's medical conditions. This credibility determination is within the Board's province as fact finder, and the Board did not capriciously disregard Claimant's evidence and arguments. Claimant does not appeal the Board's determination that Claimant's general fear of contracting COVID-19 under these circumstances was not a necessitous and compelling reason for leaving work. We, therefore, affirm the Order of the Board.

_____
**RENÉE COHN JUBELIRER,** Judge

13

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Roger S. Smith,                          :
                Petitioner       :
                           :
          v.              :     No. 1084 C.D. 2020
                           :
Unemployment Compensation                :
Board of Review,                         :
                Respondent       :

## O R D E R

**NOW**, August 23, 2021, the Order of the Unemployment Compensation Board of Review in the above-captioned matter is **AFFIRMED**.

 

                                     _____

                                      **RENÉE COHN JUBELIRER,** Judge